## BERNARD BOEKEN v. JOHN ALDERMAN.

CONTRACT, *Time of the Essence of; Occupying-Claimant Act.* In an action of ejectment brought ·by a grantee of the original owner of the land, it was shown that the defendant held under a contract with the original owner of the land, which contract stipulated in substance, among other things, that time should be of the essence of the contract; that any failure on the part of the person holding under the contract in making payments of the purchase-money or taxes due on the land should render the contract utterly null and void ; that by such failure the party holding under the contract should forfeit to the other party all improvements made on the premises and all right to compensation therefor, and that he should cease to have any interest therein. The party holding under the contract did fail to make the payments of purchase-money and taxes due on the land for several years, and there was no evidence tending to show that he ever tendered the amount of such purchase-money or taxes, or was willing to pay the same. *Held,* That such person has no right to the benefit of the occupying-claimant act.

### Error from Allen District Court.

EJECTMENT, brought by *Boeken* against *Alderman,* for the recovery of certain land in Allen county. Trial at the November Term, 1880, of the district court, and judgment for

the plaintiff, and also that the defendant have the benefit of the occupying-claimant act. The plaintiff brings the case. here. The facts appear in the opinion.

*Cates & Keplinger*, for plaintiff in error.
*Hutchings & Denison*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action of ejectment, brought by Bernard Boeken against John Alderman, for the recovery of the southwest quarter of section twenty, town twenty-five, range twenty, in Allen county. Judgment was rendered in the court below in favor of the plaintiff and against the defendant, for the recovery of the land; but the court also adjudged and ordered that the defendant was entitled to and should receive payment for his improvements under the occupying-claimant act. The plaintiff duly excepted, and now, as plaintiff in error, brings the case to this court for the purpose of reversing the order of the court below with reference to his paying for improvements under the occupying-claimant act. And the defendant, since the case has been brought to this court, has filed a cross-petition, asking that the judgment of the court below in favor of the plaintiff for the recovery of the land shall be reversed, and that the entire judgment with reference to the land shall be rendered in his favor.

This is the second controversy between these same parties concerning this same land that has been brought to this court. (*Alderman v. Boeken*, 25 Kas. 658.) The first case was an action of forcible detainer, brought by the present plaintiff against the present defendant for the recovery of the possession of the property in controversy. Of course the issues in that case were very different from what they are in this, and hence the decision in that case cannot have any application to the decision in this case. There are also many new facts now presented that were not presented in that case, and some of the facts as they are now presented in this case appear to be different from the facts as they were presented in the former case.

The facts of the case as they are now presented are substantially as follows:

In 1866, and prior thereto, the land in controversy belonged to the United States; but on July 26, 1866, congress passed an act granting this land, along with other lands to the state of Kansas, to aid the Union Pacific railroad company, southern branch, in constructing its line of railroad from or near Fort Riley down the Neosho valley to the southern line of the state in the direction of Fort Smith, Arkansas. (14 U. S. Stat. at Large, 289.) The Missouri, Kansas & Texas railway company afterward became the successor of the Union Pacific railway company, southern branch, and entitled to all its rights and privileges. Sometime prior to July 25, 1870, the Missouri, Kansas & Texas railway company had so completed its road as to be entitled to the land in controversy; and on August 16, 1870, entered into a contract with C. D. Trimble for the sale of such land to him. The consideration for the land was $680, to be paid in ten equal annual payments of $68 each, from August 16, 1871, up to August 16, 1880. Said contract contained, among other stipulations, the following:

"And the said second party, (C. D. Trimble,) in consideration of the premises, hereby agrees that he or his legal representatives or assigns will make punctual payment of the above sums as each of the same respectively becomes due, and that he will regularly and seasonably pay all such taxes and assessments as may hereafter be lawfully imposed on said premises. . . .

"And it is hereby agreed and covenanted by the parties hereto, that time and punctuality are material and essential ingredients in this contract. And in case said second party shall fail to make the payments aforesaid, and each of them, punctually and upon the strict terms and times above limited, and likewise to perform and complete all and each of his agreements and stipulations aforesaid strictly and literally, without any failure or default, then this contract, so far as it may bind said first party, (the railway company,) shall become utterly null and void, and the whole amount of the principal mentioned herein remaining unpaid shall immediately become due and payable, and all rights and interests hereby created or

then existing in favor of the second party, or derived from him, shall utterly cease and determine, and the right of possession and all equitable and legal interests in the premises hereby constructed [contracted] shall revert to and revest in said first party without any declaration of forfeiture or act of reëntry, or any other act of said first party to be performed, and without any right of said second party of reclamation or compensation for moneys paid or improvements made, as absolutely, fully and perfectly as if the contract had never been made. And said party of the first part shall have the right immediately upon the failure of the party of the second part to comply with the stipulation of this contract, to enter upon the land aforesaid and take immediate possession thereof, together with the improvements and appurtenances thereto belonging. And said party of the second part covenants and agrees that he will surrender unto the said party of the first part the said land and appurtenances, without delay or hindrance; and no court shall relieve the party of the second part from a failure to comply strictly and literally with this contract. And it is further stipulated that no assignment of the premises shall be valid, unless the same shall be indorsed thereon."

This contract was never recorded. On March 2, 1872, Trimble assigned his interest in said contract, and all his interest in the land in controversy, to Charles W. Coit. On August 14, 1872, Coit made a payment on the land, which included all that was due on the land up to and including August 16, 1872. Coit also paid all the taxes due on the land up to and including the year 1872. These were the last payments of purchase-money or taxes that were ever made on the land by any person holding or claiming the land under or by virtue of said contract. On November 3, 1873, a patent for the land was issued by the United States to the Missouri, Kansas & Texas railway company. This patent was recorded in the office of the register of deeds of Allen county, on November 21, 1873. On August 30, 1875, the railroad company conveyed the land in controversy to Nelson Burnham, by a deed of general warranty, and this deed was duly recorded November 6, 1875. It does not appear that the land in controversy was at this time occupied or in the pos-

session of any person; and it does not appear that Burnham had any notice of any of the rights of any person holding or claiming to hold the land under said contract made between the railroad company and Trimble. From anything appearing in the record, he was an innocent and *bona fide* purchaser of the property, without knowledge or notice of said contract or of any rights or claims under it. There is nothing in the case to show that any of the parties holding or claiming to hold under said contract ever took possession of the property prior to March or April, 1877. In March or April, 1877, Coit sold all his interest in the contract and in and to the land in controversy to the present defendant, John Alderman; but no written assignment of the contract was made at that time. The entire transaction between them was in parol. The defendant then took possession of the property, and has been in possession thereof ever since, and has made lasting and valuable improvements thereon. Coit, at the time he sold his interest in the property to the defendant, claimed to have the possession of the same. On October 27, 1877, Burnham sold and conveyed the property in controversy to said C. D. Trimble, by a deed of general warranty, and this deed was duly recorded on November 8, 1877. On September 11, 1879, Trimble sold and conveyed the property in controversy to the present plaintiff, Bernard Boeken, by a deed of general warranty, and this deed was duly recorded on October 6, 1879. From the record brought to this court, we think the plaintiff had knowledge, at the time he purchased the property, of sufficient facts to put him upon inquiry as to the defendant's rights, whatever they might be, in and to the property in controversy; and therefore it must be considered that the plaintiff had knowledge of the defendant's rights, whatever they might be at that time. On October 21, 1879, Coit assigned said contract by a written, though informal, assignment to the defendant, Alderman. On January 16, 1880, this present action of ejectment was commenced; and on April 10, 1880, Coit formally and in writing assigned said contract to the present defendant. There was no testimony introduced or of-

fered tending to show the value of the improvements made by the defendant, or by any other person. The last eight payments due on the land under said contract have never been paid, and there is nothing in the record brought to this court that tends to show that any one of them was ever tendered, or that the defendant, or any person under whom he claims, was ever willing to pay them. The first default made in the payment of the purchase-money was on August 16, 1873. What we have said with reference to the payments of purchase-money will also apply as to the payments of taxes. The first default in the payment of taxes was in the year 1873, and under the law was December 20, 1873. The plaintiff, and the persons under whom he holds, have paid all the taxes since 1872.

Under the foregoing facts, we do not think that the defendant has any right to the land in controversy, or even any right to the benefit of the occupying-claimant act. As we have said defore, the defendant claims by virtue of the contract made between the Missouri, Kansas & Texas railway company and Trimble, which contract was made on August 16, 1870. At the time this contract was made, the occupying-claimant act, so far as it applies to this case, read as follows:

"Sec. 601. In all cases, any occupying claimant, being in quiet possession of any lands or tenements for which such person can show a plain and connected title, in law or equity, derived from the records of some public office; or being in quiet possession of, and holding the same by deed, devise, descent, contract, bond or agreement, from and under any person claiming title as aforesaid, derived from the records of some public office, or by deed duly authenticated and recorded; . . . shall not be evicted or turned out of possession by any person or persons who shall set up and prove an adverse and better title to said lands, until said occupying claimant, his, her or their heirs, shall be paid the full value of all lasting and valuable improvements made on said land by such occupying claimant, or by the person or persons under whom he, she or they may hold the same, previous to receiving actual notice by the commencement of suit on each adverse claim by which eviction may be effected: . . .

*Provided,* That this article shall not apply to persons occupying and claiming any lands granted to this state, or granted to, or purchased by, any company to aid in the construction of any works of internal improvement in this state." (Gen. Stat. 1868, p. 749, § 601.)

On March 6, 1873, the occupying-claimant act was so amended as to virtually repeal the proviso above quoted. In other respects, the occupying claimant act, so far as it applies to this case, remains the same. The defendant claims the benefit of the occupying-claimant act as it now exists, claiming that the proviso above quoted has no application to his case; and he claims under the present occupying-claimant act as one holding under a "contract, bond or agreement from" the railroad company, which he claims was, at the time of making the contract, a "person claiming title . . . derived from the records of some public office."

We shall pass over the question whether the present occupying-claimant act, or the one in force at the time the contract was made, governs the defendant's rights under the contract, and shall examine the question whether the defendant would have any rights under either occupying-claimant act, provided the same were considered as having application to this case. We do not think that he has any rights under either act, or any act. It will probably be admitted by the plaintiff that, if the question was between the defendant and some person who claimed adversely, not only to the defendant, but to Coit, and to Trimble, and to the Missouri, Kansas & Texas railway company, and to all persons under whom the defendant claims, and that such adverse claimant should recover as against all of them, then the defendant could have the benefit of the occupying-claimant act. But the question does not arise between the defendant and some third person claiming adversely to him and to all the persons under whom he claims; but it arises virtually between him and his obligor's grantee, virtually between him and his obligor, the Missouri, Kansas & Texas railway company. It is really the same as though the question arose directly between the defendant and the Missouri, Kansas & Texas railway company. There is some

question, however, raised by the plaintiff, with reference to the validity of the assignments of the contract as made to the defendant; but for the purposes of this case, we shall assume that all the assignments were valid, and that the defendant has the same rights as though he had been the original party of the second part to said contract. This is conceding in favor of the defendant a great deal that is doubtful; and still, with all these concessions in his favor, has the defendant any rights under the occupying-claimant act? We think not. In the contract itself it was stipulated in substance that time should be of the essence of the contract; that any failure in making payments should render the contract utterly null and void; that by such failure the party holding under the contract should forfeit to the other party all improvements made on the premises and all right to compensation therefor; and that he should cease to have any interest therein. We do not think that a party holding under such a contract, and forfeiting his rights under it by failing to perform its stipulations, can obtain relief under the occupying-claimant act.

The judgment of the court below, in favor of the plaintiff for the recovery of the land, will be affirmed; and the order of the court below, giving to the defendant the benefit of the occupant-claimant law, will be reversed.

All the Justices concurring.