ALMIRA WEST, Appellant, v. H. W. AXTELL ET AL.—17 S. W. (2d) 328.

Division One, March 29, 1929.

*Joseph V. Pitts* for appellant.

*J. S. Clarke* for respondent Cecil H. Hart.

404

SEDDON, C.—Plaintiff commenced this action in the Circuit Court of Douglas County on October 1, 1925, to foreclose a certain deed of trust, dated November 15, 1922, and executed by H. W. Axtell and Lilly Axtell, husband and wife, conveying to Nat West, trustee, eighty-five acres of land, specifically described, situate in Douglas County, Missouri, in trust to secure the payment of grantors' certain promissory note for the principal sum of $1,000, dated November 15, 1922, and payable five years after date, to the order of plaintiff, Almira West, with interest at the rate of six per cent per annum from date until paid, payable annually, and, if the interest be not paid annually when due, then same shall become a part of the principal and bear the same rate of interest. The said deed of trust contained the usual condition that, "should the said first parties (H. W. Axtell and Lilly Axtell) fail or refuse to pay the said debt, or the said interest, or any part thereof, when the same or any part thereof shall become due and payable, according to the true tenor, date and effect of said note, then the whole shall become due and payable, and this deed shall remain in full force; and the said party of the second part (Nat West, trustee), or in case of his absence, death, refusal to act, or disability in any wise, the (then) acting sheriff of Douglas County, Missouri, at the request of the legal holder of the

said note, may proceed to exercise the powers of sale and sell the property hereinbefore described, or any part thereof, at public vendue to the highest bidder, at the courthouse door, in the County of Douglas, State of Missouri, for cash, first having given —— legal days notice of the time and terms of sale and place of sale and the property to be sold by advertisement in some newspaper printed and published in the County of Douglas, and upon such sale shall deliver deed in fee simple of the property sold to the purchaser or purchasers thereof, and receive the proceeds of the sale; and any statement or recital by said trustee in relation to non-payment of the money secured to be paid, the advertisement, sale and receipt of money and the execution of the deed to the purchaser, shall be received as prima-facie evidence of such facts.''

The petition is in conventional form, alleging the execution and delivery of said deed of trust, and of the promissory note described therein and secured thereby, to the plaintiff, Almira West; that the principal, and the interest thereon since November 15, 1923, is due and unpaid according to the terms of said note and deed of trust; that the trustee, Nat West, named in said deed of trust, has refused to act; wherefore, plaintiff prays for judgment on said note and that the equity of redemption in the described lands be foreclosed, and for such further orders and decree in the premises as to the court may seem proper. The original note and deed of trust are attached to the petition as exhibits.

The defendant W. A. Clinkingbeard answered as follows: ''Comes now defendant W. A. Clinkingbeard, and for his separate answer to plaintiff's petition says that he is now, and was at the time herein mentioned, sheriff of Douglas County, Missouri, and that pursuant to a notice duly published he sold the lands in plaintiff's petition described the 25th day of September, 1925, at the courthouse door, as provided in said notice, in Ava, the countyseat of Douglas County, Missouri, to the highest bidder for cash, and that Cecil A. Hart purchased said lands for the sum of $280, and that, as acting trustee, he executed and delivered to said Cecil A. Hart, a trustee's deed to said lands; that said notice of sale was prepared and placed in the hands of the publisher by Jos. V. Pitts, attorney for plaintiff herein; that said Cecil A. Hart paid him the said $280, which he tendered to the said Jos. V. Pitts, which said attorney refused to accept, and defendant hereby tenders into court the said purchase money for said lands. Defendant denies that he refused to act as trustee and sell said lands; but says he did sell the same as herein alleged; but says he did refuse to advertise and sell said lands a second time.

''Defendant denies each and every other allegation contained in plaintiff's petition.

"Wherefore, defendant asks to be discharged with the costs taxed against the plaintiff."

Cecil A. Hart was allowed to interplead, as a party defendant, and answered as follows:

"Comes Cecil Hart, and after being allowed by the court to interplead in this cause, states and represents for his special answer to the petition of the plaintiff, and says:

"That the above-named plaintiff was the owner of the note and deed of trust described in plaintiff's petition, as alleged, up to the 25th day of September, 1925, and not thereafter.

"That on the 3rd day of September, 1925, the plaintiff through her attorney, Jos. V. Pitts, caused the lands in said deed of trust described to be advertised in the Douglas County Herald, a weekly newspaper, published in Douglas County, Missouri, and to be sold at public vendue, at the east front door of the state circuit court house, in the city of Ava, Missouri, to the highest bidder, for cash at public auction, by and through the sheriff of Douglas County, Missouri, W. A. Clinkingbeard, as acting trustee, as provided by the terms of said deed of trust.

"That on the 25th day of September A. D., 1925, at the time and place advertised for sale of the lands described by said deed of trust, and by plaintiff's petition herein, this interpleader was present and while said lands were being auctioned off and sold, and in a contested bidding for same, this interpleader was the highest bidder for cash in the sum of $280, and same was stricken off and sold to him; and that thereafter the said sheriff, as such acting trustee, executed and delivered to interpleader his trustee's deed for said lands and received in cash the said amount of such bid in the sum of $280.

"Interpleader says that, by virtue of said sale and delivery to him of said deed as aforesaid, he became and is now the owner of said lands in fee simple, and that plaintiff has no right, title or interest in the same.

"Wherefore, interpleader says that plaintiff should not be permitted to prosecute her said suit to again foreclose said deed of trust upon said lands, and that she be barred and precluded from doing the same, and that this interpleader recover his costs herein expended and that execution issue therefor."

Plaintiff filed a reply to the answer of the defendant and interpleader, Cecil A. Hart, as follows:

"Plaintiff admits that W. A. Clinkingbeard was at the time of this purported sale and is now Sheriff for Douglas County, Missouri, and that said trustee did at the request of Jos. V. Pitts, attorney for plaintiff herein, advertise this foreclosure sale for September 25, 1925.

"Plaintiff further replying, denies each and every other allegation in defendant's answer contained.

"Plaintiff further replying to answer of defendant says that plaintiff is a widowed lady, living in the State of Kansas, and that she was not present in Ava, Missouri, on September 25, 1925; but that plaintiff was represented by her attorney, Jos. V. Pitts, of Ava, Missouri, and said attorney was authorized to bid at this trustee's sale on said lands herein the sum of $800.

"That said attorney for plaintiff herein, was present at the east front door of the state circuit court house in the city of Ava, Missouri, on the 25th day of September A. D., 1925, and during the sheriff's sales; and remained at the said usual place of sheriff's sales until the sales were over and the crowd dispersed, and plaintiff's said attorney returned to his office, attending to his duties as a lawyer.

"Plaintiff further replying says that sheriff, W. A. Clinkingbeard, acting trustee, herein, having overlooked this sale, did at the instance and solicitation of J. E. Hart, a prospective purchaser for said lands herein, a real estate agent of Norwood, Missouri, went with said J. E. Hart to the office of the Douglas County Herald and secured from the foreman of said paper what was purported to be a proof of publication of the notice of this trustee's sale, and returned to the east front door of said court house in Ava, Missouri, and sold to said J. E. Hart the said lands herein in suit.

"Plaintiff further replying says that said sheriff and acting trustee was never in possession of the refusal to act of the trustee named in said deed of trust and said sheriff and acting trustee was never in possession of the $1,000 note described in said deed of trust.

"That said instrument in writing, purported to be a proof of publication, attached to sheriff's deed recorded in book 87, page 91, Douglas County, Mo., records, was *not* in truth and in fact sworn to by Ira M. Davis on the 25th day of September, A. D. 1925, or at any other date, before William Fletcher, probate judge, but William Fletcher had signed his name and affixed his seal, and over which said signature and probate seal said foreman, Ira M. Davis, filled in the date, and the numbers and dates of issues of said paper and on the margin of said blank pasted the copy of publication; and delivered same to said trustee and J. E. Hart, prospective purchaser of said lands.

"That J. E. Curry was on the 25th day of September, 1925, and for years prior thereto, editor of Douglas County Herald, and it was usual and customary for said J. E. Curry to make all proofs of publications, when he was present in the city of Ava, Missouri, and to deliver said proofs of publication to the beneficiary, or attorney for beneficiary, in the mortgage or deed of trust in foreclosure.

"That J. E. Curry, editor of Douglas County Herald, was in his office on the 25th day of September, 1925, caring for his usual and customary duties.

"That the name of Jos. V. Pitts, as attorney for beneficiary in said deed of trust appeared in the publication, herein in question, and said trustee well knew that said attorney Pitts represented said beneficiary, plaintiff herein, and knew he, said attorney Pitts, was *not* present at said sale, and said trustee failed and neglected to notify him, said attorney Pitts, of the hour of said sale.

"That said trustee, did wrongfully and fraudulently sell said lands in suit for a grossly inadequate consideration to J. E. Hart, and did wrongfully and fraudulently thereafter make a trustee's deed to said lands herein to Cecil A. Hart; and all in fraud of the rights of said trustee's principals, i. e. the mortgagors and mortgagee herein.

"Wherefore the premises considered, plaintiff prays the court for its decree, setting aside said trustee's deed to Cecil A. Hart, and that the same be for naught held and esteemed."

A like reply was filed by plaintiff to the answer of defendant W. A. Clinkingbeard.

It was stipulated at the trial by the parties herein that plaintiff is the legal owner and holder of the promissory note described in the petition and secured by the deed of trust in controversy, and that the principal of said note, and the accrued interest thereon, are due and unpaid; that plaintiff is a widow and resides at or near Garnett, Kansas; that she was not present in Ava, Missouri, on September 25, 1925, when the lands in controversy were purported to have been sold under the terms of the deed of trust aforesaid; that, on September 25, 1925, plaintiff was represented by Joseph V. Pitts, her attorney, and that said attorney was authorized to represent plaintiff and to bid at the trustee's sale for plaintiff the sum of $800 for said described lands; and that the mortgagors, H. W. Axtell and Lilly Axtell, are insolvent and a deficiency judgment against them would be uncollectible.

Witness Ira M. Davis testified on behalf of plaintiff: "On September 25, 1925, I was working in the Herald Publishing Company and was the foreman in the publication of the Douglas County Herald. I well remember Mr. Curry, the editor, being out, and Sheriff W. A. Clinkingbeard came in the office, in company with another man, whom I understood was a Mr. J. E. Hart, but I was not personally acquainted with him. They were in a hurry and wanted a proof of publication, wherein the sheriff had advertised a foreclosure of a deed of trust, given by H. W. Axtell and Lilly Axtell, his wife, recorded in book 79, page 360, Douglas County records, and for sale on the 25th day of September, 1925. We had in the office on hand some blank proofs of publication, which Judge William Fletcher had signed, and to which he had affixed his seal, and I pasted on this a copy of the publication advertising this sale of land, and signed the proof statement and delivered same to the sheriff, and he and the

man with him left the Herald office. I did not swear to this statement on the 25th day of September, 1925, or on any other day, before Probate Judge William Fletcher, or any other person. I have been working in the Douglas County Herald office for years, and it is an unusual thing for me to make this proof of publication. It has been the custom of this office for the editor, Elmer Curry, to make the proof of all publications, and he was in the office most all of the morning of the 25th day of September, 1925, and was only temporarily absent in the afternoon of that day, when the sheriff wanted this proof, and I gave it out in the shape as above described because of the apparent great rush of the matter.''

Witness Joseph V. Pitts testified on behalf of plaintiff: ''Along about the first of September, 1925, I received from attorneys in Kansas a note for $1,000 signed by H. W. Axtell and wife, secured by the deed of trust in controversy, to foreclose, and I placed the foreclosure notice with the Douglas County Herald, signed by Mr. Clinkingbeard, or gave it to him. I am not certain which one of us placed it. It was placed. The sale was advertised for September 25, 1925. On the morning of September 25, 1925, I telephoned to the editor to bring the publications of that day. The editor delivered to me a number of publications and proofs of publications for action of that day, and I took them and filed them in court and cared for them. The editor had overlooked this publication, and I, as attorney for plaintiff, had overlooked this publication. I attended the sales on September 25, 1925, at the east front door of the courthouse, and took part in the bidding on some lands, and, after the sales were over, I returned to my office. I knew nothing of the sale of this land until, I believe, it was Monday following, when I met the sheriff in the hallway of the courthouse in Ava, and he asked me about the Axtell note and told me he wanted to make the credit, showing the sale of the land, and then it was discovered that he had sold the land in my absence on the 25th day of September, 1925. It was the custom of the editor of the Herald to deliver to me the proofs of publications of any sales wherein I was attorney, and this is the reason I give for not knowing of the sale on that day. Also, it has been for some twenty years my practice, in the foreclosing of deeds of trust, to hold in my safe the note, and the refusal of the trustee to act, until the day of sale. I did in this case retain the possession of the $1,000 note and the trustee's refusal to act, several days after this pretended sale, and no credit was made on this note showing this sale, and, as attorney for the plaintiff herein, I would have refused the $280 if it had been offered, for the reason it was inadequate consideration and in fraud of the rights of my client.'' Cross-examination: ''I prepared the publication notice and caused it to be published, and was representing Mrs. Almira West,

the plaintiff. The land was advertised for the sufficient time. I knew when the land was advertised to sell, but had it posted on my calendar for a week after the 25th, and I was not present to bid it in. The usual time for trustee's sales is between one and two o'clock P. M. I believe this sale was after two o'clock. When I wrote the publication I had it in mind and knew it; but by mistake I had it on my calendar for one week afterwards. This sale was overlooked by the editor, the sheriff and myself, and the record I had made in my office on my calendar was in part to blame. . . . Had the sheriff called for the note I would have had notice of the sale. On the day of this sale, other pieces of land were sold. The Ridenour lands were sold, and tax lands were sold, and I remained at the east door of the courthouse until all of the sales were over, and I returned to my office to prepare exceptions in the Ridenour sale, and I thought the sales were all over. . . . When the other sales were made, and the sheriff saw and knew I was not present, he should have given me notice of this sale, for he knew I was the attorney in the sale, and he had authorized me to sign his name to the notice of sale, and my name also appeared on the published notice, as attorney.''

The published notice of the sale under the deed of trust in controversy was put in evidence, and appears to be in proper form. It sets forth the date and book and page of the record of the said deed of trust, the grantors, the time, terms and place of sale, and the description of the property to be sold, and recites the default in the terms of the deed of trust, the refusal of the named trustee to act, and that the Sheriff of Douglas County, as the substitute trustee, ''will, on Friday, the 25th day of September, 1925, between the hours of one o'clock and six o'clock in the afternoon of that day, at the east front door of the state circuit courthouse in the city of Ava, Douglas County, Missouri, sell the above-described lands to the highest bidder, for cash, at public auction, for the purpose of satisfying said debt, interest and cost of executing this trust.'' The notice was signed, ''W. A. Clinkingbeard, Sheriff for Douglas County,'' and is also signed, ''Joseph V. Pitts, Attorney for Beneficiary.'' Evidence was proffered by plaintiff that the land described in the deed of trust was reasonably worth $800 at the time of the purported trustee's sale. Plaintiff put in evidence a *lis pendens*, or notice of the commencement of the present action, which was duly filed and recorded in the office of the Recorder of Deeds of Douglas County on October 1, 1925.

The defendants put in evidence a trustee's deed, dated September 25, 1925, and signed and acknowledged on September 25, 1925, by W. A. Clinkingbeard, Sheriff of Douglas County and substitute trustee, which trustee's deed is in the usual form and contains the usual recitals, conveying the land described in said deed of trust to

Cecil A. Hart, he being "the best and highest bidder for the sum of $280" at the purported trustee's sale held on Friday, September 25, 1925.

Witness J. E. Hart testified on behalf of defendants: "I live at Norwood, Missouri, and I was with Cecil A. Hart, at Ava, Missouri, on September 25, 1925, when this land in question was sold, and I bid on the land. We came here for the purpose of bidding on this. We saw the advertisement in the Herald. We were afraid we would be too late. We got here in the morning about ten o'clock, and came immediately to the courthouse and inquired if the land sales had been made, and I was told that they would not be made until in the afternoon, and I waited until the sales came up. There were, I believe, three sales made, and this particular land was not put up for sale. The sales began, I think, about one or 1:30 o'clock in the afternoon, and they had three sales. I noticed this land had never been put up, but as quick as he (the sheriff) put up the last sale and said that was all, I was standing there and I said, 'You have another tract for sale,' and he (the sheriff) said, 'No, that is all,' and I said, 'There is another tract advertised for today, because I came here for that purpose,' and he said, 'Is that so, I will go to the Herald office and see.' And he (the sheriff) left the courthouse door and went to the Herald office to see, and he was gone quite a while, and I wondered what was the reason, and I went over there and stepped in. Mr. Clinkingbeard (sheriff) said, 'We are preparing it; we will have it ready and sell it a little later,' and I walked back to the courthouse door by myself, and Mr. Clinkingbeard came in about ten minutes and hollowed at the front door of the courthouse, 'Come over and buy you a farm,' and there were a good many people in the hall. It was along in the afternoon about 2:30 or three o'clock; it was after the other sales had been made a half of an hour. I bid, I expect, a dozen bids, and 'Bid' Reynolds bid, and the land was finally knocked off to me at $280. Circuit court was in session, and I noticed Mr. Clinkingbeard was busy, and I told him to make the deed to Cecil Hart, and wrote the check for $280 and handed it to him, and I said, 'You can mail me this deed,' and I went home immediately. I had no talk with the sheriff about bidding the land off to defraud anybody. As far as I know, the sale was made in good faith, absolutely. I thought that deed was as good as a United States patent. I had seen this land and knew it. It lays about six miles from Norwood, and I came here to bid on the land. I finally got the trustee's deed from Mr. Clinkingbeard and put it on record. I had no knowledge of any irregularity in this sale." Cross-examination: "I am in the real estate business at Norwood, and deal in speculations. My son did not bid. He authorized me to bid. Q. At the sheriff's sale, who did the sheriff knock the land off to? A. To

me, J. E. Hart. Q. Did you make the deed to your son? A. No, sir. Q. Why didn't you receive it? A. My boy had been in Oklahoma City and had lost his health and came home to help in the real estate business, and I wanted to encourage him, and so the deed was made to Cecil A. Hart. I had sold this land before for $2,000. I think the land is worth more than $280. It is reasonably worth $750. I would take $1,000 for it."

Witness W. F. Reynolds, referred to in the record as "Bid" Reynolds (apparently for the reason that he seems to have been often a bidder at tax and foreclosure sales in Douglas County), testified on behalf of defendants: "I knew about this land sale and was a contesting bidder when it sold on the 25th day of September, 1925. My bid was next to Mr. Hart's bid of $280. I bid $275, and bid no more. I don't think Mr. Pitts (plaintiff's attorney) was present. I was standing there after it was sold, and he (Mr. Pitts) came down and was asking about it and said it slipped his mind; that he thought it was to sell the next month; that was on the same day and about an half hour after the sale. The land was sold about 2:30 o'clock." Cross-examination: "I do not know this land, but I looked on my plat and saw where it was located, and knew it was worth a right smart, and I was willing to bid $275 on it without seeing it. I was bidding as a speculation, aiming to get more out of it. I am in the lumber business, and invest and speculate, and I have about 14,000 acres in Douglas County, 800 acres in Taney County, and some in Minnesota and Arizona, about 16,000 acres, I guess."

The defendant sheriff, W. A. Clinkingbeard, testified: "On September 25, 1925, I sold this land in question, as acting trustee, and the sale was about two o'clock, or a little later. I sold the land for $280. I made three sales just before that. After I got through selling, this man Hart stepped up and said, 'You have got another land sale,' and I didn't know it was to be sold, and when I thought I was through, this man Hart stepped up and said, 'You have got another land sale,' and I said, 'I guess not.' I got all the publications over there. I asked Mr. Davis, and he said that was all the publications for today, and I says, 'I will go back over and see,' and Ira Davis said, 'I guess there ain't any more,' and he got the Herald, and he said, 'We have overlooked one,' and he said, 'I didn't know we had that one;' and I came back over and sold it, and the hall was full of people, and if Mr. Pitts (plaintiff's attorney) was present I didn't see him. I didn't know where the land was, or anything about it, and didn't know it was to sell, and this advertisement, I didn't know he (Mr. Pitts) had put it in the paper. He never said a word to me about it. After the Herald prepared (the proof of publication of) the notice, I returned to the courthouse and sold the land. It might have been after two o'clock. 'Bid' Reynolds and Mr. Hart were

the bidders. They made several bids, and finally the land was sold to Mr. Hart for $280, and he gave me a check, and I executed him a deed, and there was no understanding between me and Hart that we would sell the land in the absence of Mr. Pitts. I didn't know Hart's name until he gave me the check. I didn't know Hart at the time. I sold the land in keeping with the advertisement that I afterwards learned Mr. Pitts put in my name. I talked with Mr. Pitts afterwards and he let on like he was surprised. When I went to get the note to credit it, Mr. Pitts let on like he was surprised, and I told him I didn't know I would have to notify him, and he wouldn't let me have the note or take the money. This trustee's sale was made by me like other sales. I made three other sales that same day. I have the money yet. Mr. Pitts refuses to accept it.'' Cross-examination: ''Q. On the day of the sale, after your main sales, you say Mr. Hart came to you? A. Yes, I had just got done selling. Q. He came to you and told you you had overlooked a sale? A. Yes, and he says, 'You have got another sale.' Q. And what was your reply to him? A. I told him I guessed not. Q. And you went alone to the Herald office? A. Yes, sir. Q. And he came over there? A. He stepped in the door, and I said, 'We will be ready in a little bit,' and he walked out. I put the land up, received bids, and sold to him for $280. I stood on the platform, at the east door of the courthouse, until I got wet, and I got back in the house; that is where I usually sell land, and sold it all there that day.''

Mr. Elmer Curry, the editor of the Douglas County Herald, testified: ''I was in the office part of the time on the morning of the 25th of September, 1925. I made up proofs of publication in the morning, but I overlooked this one, I remember that. I overlooked this sale, that morning, in making up the proofs; I don't know why I overlooked it; I was out of the office when Mr. Davis made up the proof. If Mr. Pitts had called on me for this proof of publication, I would have made it to him; but he didn't call for it, and I didn't think about it.''

The cause was tried by the court, without the aid of a jury, upon the equitable issues presented and joined by the answers of the defendants, W. A. Clinkingbeard and Cecil A. Hart, and the reply of plaintiff thereto, and resulted in a finding by the trial chancellor that the defendant, Clinkingbeard, as sheriff and substitute trustee, had sold the lands in plaintiff's petition described, pursuant to a notice duly published according to the terms of the deed of trust sought to be foreclosed, prior to the filing of the present action, and on September 25, 1925; that said sale was fairly and regularly conducted; that defendant Cecil A. Hart was the highest and best bidder for said lands, and the same were sold to him for the sum of $280; that there was no fraud practiced by the defendant Clinkingbeard, and

414

that it was the duty of said defendant to execute and deliver a trustee's deed to the defendant and interpleader, Cecil A. Hart, conveying the title to said lands, and that defendant Clinkingbeard did execute and deliver said deed to defendant and interpleader Cecil A. Hart, and that defendant Clinkingbeard has no right or power to again advertise said lands for sale under the terms and powers of said deed of trust; whereupon a judgment and decree was entered to the effect that foreclosure and sale of said lands under the said deed of trust be denied to the plaintiff, and that plaintiff take nothing by her suit or action; that the defendant and interpleader, Cecil A. Hart, is the owner in his own right of, in and to the described lands; and that the defendants be discharged, and recover of plaintiff the costs of the action. After unsuccessful motions for a new trial and in arrest of judgment, plaintiff was allowed an appeal to this court from the judgment below. This court takes jurisdiction of the appeal because the case is one "involving title to real estate." [Sec. 12, Art. VI, Constitution of Missouri.]

Error is assigned in the findings of the trial chancellor, and in the entry of the decree and judgment, upon the grounds that they are for the wrong party; that the chancellor erred in sustaining and upholding the trustee's sale purported to have been held on September 25, 1925; and that plaintiff, under all the evidence herein, is entitled to a judgment of foreclosure of the deed of trust in controversy.

The impartial duties of a trustee, in the sale of mortgaged real estate under, and pursuant to, the terms of a deed of trust, have frequently been clearly stated and positively announced, and are thoroughly and well established, in the jurisprudence of this State. In the early case of Goode v. Comfort, 39 Mo. 313, 325, Judge WAGNER, speaking for this court, thus prescribed the duties of a trustee in executing the powers conferred by a deed of trust: "Trustees are considered as the agents of both parties—debtor and creditor—and their action in performing the duties of their trust should be conducted with the strictest impartiality and integrity. They are entrusted with the important function of transferring one man's property to another, and therefore both reason and justice will exact of them the most scrupulous fidelity. Courts of equity have always watched their proceedings with a jealous and scrutinizing eye; and where it is clearly shown that they have abused their trust, or combined with one party to the detriment of the other, relief will be granted. Not that a sale made by them will be set aside on slight and frivolous grounds; but where it appears that substantial injury has resulted from their action, where, in pursuance of their powers, they have failed or neglected to exercise a wise and sound discretion, equity will interfere. It is impossible, in the very nature of things, to lay down any precise rule applicable alike to all cases which may

arise, but every case must be decided on the especial facts and circumstances which surround it and upon which it is founded.''

This court has always uniformly held trustees under deeds of trust in the nature of mortgages strictly accountable in the performance of their impartial duties, and, although there may be no substantial evidence of actual fraud on the part of the trustee in the performance of his duties, nevertheless, where it appears that the sale made by the trustee, under the powers conferred by the deed of trust, was not entirely fair and unexceptionable, or that the trustee was guilty of an abuse of a wise or sound discretion in the conduct of the sale, we have never hesitated to set aside such a sale and to reinstate the deed of trust, where it appears that injury has resulted to either of the parties, whether mortgagor or beneficiary of the trust deed. [Chesley v. Chesley, 49 Mo. 540; Tatum v. Holliday, 59 Mo. 422; Vail v. Jacobs, 62 Mo. 130; Holdsworth v. Shannon, 113 Mo. 508; Axman v. Smith, 156 Mo. 286; Givens v. McCray, 196 Mo. 306; Polliham v. Reveley, 181 Mo. 622; Hanson v. Neal, 215 Mo. 256; Middleton v. Baker, 262 Mo. 398; Lunsford v. Davis, 300 Mo. 508; Guels v. Stark (Mo. Sup.), 264 S. W. 693; Krug v. Bremer, 316 Mo. 891, 292 S. W. 702.]

In the Krug case, supra, we said (316 Mo. l. c. 900) : ''The status of the trustee is that of a trusted agent for all parties to the transaction. This trusteeship or agency comprehends not only the maker of the notes secured by the deed of trust, that is the *cestui que trust*, but includes every party to the transaction. When the trustee exercises the power of sale in foreclosing the deed of trust, it is his duty to act fairly and justly to protect all parties concerned. While it may be, in conducting such sale, that he is not conscious of an intention to act unfairly, yet if his conduct was actually unfair and operated to the injury of the complaining party to the transaction, such conduct, even though unintentional, will not relieve the sale from its taint, nor the unfair act from its consequences.''

And in the Polliham case, supra, we approvingly quoted 2 Perry on Trusts (5 Ed.) p. 602, as follows (181 Mo. l. c. 634) : ''Sales under powers in deeds of trusts or mortgages are a harsh mode of foreclosing the rights of the mortgagor. They are scrutinized by courts with great care, and will not be sustained unless conducted with all fairness, regularity and scrupulous integrity. Upon very slight proof of fraud, or unfair conduct, or any departure from the terms of the power, they will be set aside.''

While we think that the evidence herein exonerates the defendant W. A. Clinkingbeard, sheriff and substitute trustee under the deed of trust involved herein, from any actual fraud or intention to act unfairly in the performance of his powers and duties under said deed of trust, or of any fraudulent connivance or collusion with the bidder,

or with the purported purchaser, at the trustee's sale, yet we believe that the evidence herein clearly discloses that said defendant failed to act with that strict impartiality (respecting the rights and interests of the *cestui que trustent*, i. e. the mortgagors, and the legal holder of the mortgage note, whom alone he represented under the terms of the deed of trust) required of him by the law when acting in the capacity of a trustee under such deed of trust, and that he failed to exercise that wise and sound discretion demanded of a trustee in the performance of his trust duties and powers in the making of the trustee's sale. The evidence herein shows that the defendant sheriff had made all the sales, some three in number, of which he had knowledge that he was required to make on the afternoon of September 25, 1925, and that those sales were made at the usual and customary hour for the making of judicial or trustee's sales, which hour, according to the uncontroverted testimony, was between one and two o'clock in the afternoon. Having made all of the sales of which he had knowledge, the defendant sheriff thereupon announced (according to the testimony of the witness Hart), apparently in the presence of those attending the sales, that the three sales just made were all of the sales to be made on that afternoon. Having heard such announcement from the sheriff, it is reasonable to infer that the gathering of persons attending those sales dispersed. Plaintiff's attorney, Mr. Pitts, who had attended the three sales held during the hour between one and two o'clock of that day, testified that he understood and believed that the "sales were over" for that day, and returned to his office. It further appears from the evidence that, thereafter, J. E. Hart informed the defendant sheriff that he had another land sale to make, and the sheriff, believing that he had made all of the sales advertised for that day, replied, "I guess not." Upon the insistence and importunities of Hart, however, the defendant sheriff left the court house and went to the office of the Douglas County Herald, where, with the assistance or aid of the foreman of the printing office of the newspaper, it was discovered that the trustee's sale involved herein was advertised for that afternoon. The advertisement bore thereon the name or signature of Joseph V. Pitts, as "attorney for the beneficiary" of the deed of trust to be foreclosed under said advertisement. Notwithstanding the fact that the advertisement disclosed upon its face that Joseph V. Pitts was the attorney and legal representative of the beneficiary of the deed of trust, and of the promissory note secured thereby, no effort whatsoever appears to have been made by the defendant sheriff and substitute trustee to communicate with Mr. Pitts, or to advise him that the sheriff intended to proceed with the trustee's sale, notwithstanding that Ava, the county seat of Douglas County and the place of sale, is a village or town of small population, and it would have re-

quired but a very few minutes of time to have sought and found Mr. Pitts, before proceeding with the sale. Heeding the importunities of Hart, who, according to his own testimony, was a speculator looking for a bargain, and who was an utter stranger to the deed of trust, the defendant sheriff and substitute trustee returned to the courthouse door and proceeded to cry, or announce, the sale, notwithstanding the fact that he must have known that none of the parties to the deed of trust, mortgagors or beneficiary, was present or represented at the purported sale, and at a time some half hour, or more, after the previous sales had been held, and after the usual and customary hour or time for holding such sales had passed. While defendant's witnesses testified that "there were a good many people in the hall" at the time the sale was made, it seems to be clear from the evidence that there were but two, and only two, bidders at the sale, namely, J. E. Hart and another, who bore the pseudonym, or nickname, "Bid," apparently because of his frequent presence as a bidder at such sales, and who testified that he knew the lands in controversy were "worth a right smart" and that he "was bidding as a speculation, aiming to get more out of it." Furthermore, the evidence indisputably shows that the defendant sheriff and substitute trustee was not possessed of the original deed of trust, or of the promissory note secured thereby, or of the refusal of the named trustee to act, which instruments clothed the defendant sheriff with the power to act in the premises, but that such instruments were at the time in the exclusive custody and possession of Mr. Pitts, the attorney and representative of the beneficiary of the deed of trust, and were securely deposited in the safe in his office. It also appears to be uncontroverted by the evidence that the lands described in the deed of trust and in controversy herein sold for an inadequate price and consideration. All of the witnesses gave the reasonable value of the lands at the time of sale as being approximately $800, whereas the bid of the purported purchaser was only $280, or about one-third of the value of the lands. After deducting from the bid of $280 the cost and expenses of the sale, there would be a mere pittance left to be credited upon the promissory note of $1,000 owned and held by the plaintiff herein, and, according to the stipulation and admissions of the parties herein, the makers of the note are insolvent, and a deficiency judgment against them would be uncollectible.

While mere inadequacy of the bid, or consideration, of a trustee's sale of lands alone is not always, or necessarily, a ground in equity for setting aside the sale, yet where there is substantial evidence that the sale was held at an unusual hour, and that the trustee failed to use that wise and sound discretion required of him in the exercise of the powers of sale, or where there is substantial evidence of unfairness and partiality in the conduct of the sale, when coupled with in-

adequacy of consideration and consequent injury to either of the parties to the deed of trust, or their privies, the sale should be set aside upon the grounds of common fairness and justice. [Whelan v. Reilly, 61 Mo. 565; Stoffel v. Schroeder, 62 Mo. 147; Vail v. Jacobs, 62 Mo. 130; Holdsworth v. Shannon, 113 Mo. 508; Daggett Hardware Co. v. Brownlee, 186 Mo. 621; Stephenson v. Kilpatrick, 166 Mo. 262; Montgomery v. Miller, 131 Mo. 595; Hanson v. Neal, 215 Mo. 256; Lunsford v. Davis, 300 Mo. 508.] In the Hanson case, supra, Judge LAMM forcefully said (215 Mo. 1. c. 275);: ''How did this sheriff measure up to the foregoing standard of duty? Not at all. Let the record tell the story. At the instance of appellants he made the sale at an unusual hour—itself a badge of fraud in the absence of a request from the parties in interest. He made it in the teeth of a reasonable request from the mortgagee to await the usual hour. While inadequacy of consideration as a general rule is not of itself a distinct principle of relief in equity [1 Story Eq. (11 Ed.) sec. 245.], yet in this instance he permitted the property to pass at so gross an inadequacy of price as 'to shock the conscience,' and, when the conscience is shocked, the ear of the chancellor opens. [Ibid, sec. 246.] He did this at the request and to suit the by-ends (the so-called *convenience*) of bidders who were itching for a quick sale and a fetching bargain, and who persuaded him to make it before the representative of the mortgagee could arrive from Neeleysville. Not only so, but the mortgagor had a representative in Doniphan who testified he was not present because of the untimely hour. The sale, then, was in very truth and fact made for the benefit of those who wanted to feather their own nests by sacrificing the interests of both mortgagor and mortgagee, and succeeded in doing that very thing. If such sale is not blinking all just ideas of *mine* and *thine*, if it is not unfairly taking the property of one man and giving it to another, what is it?''

Nor was the defendant sheriff and substitute trustee powerless to do otherwise than to make the sale on the afternoon of September 25, 1925, merely because the sale was advertised for that date, for in the exercise of a wise and sound discretion, under all the existing circumstances, and especially in the absence of both parties to the deed of trust, or their respective representatives, he could, and should, have postponed or adjourned the sale, and awaited a more auspicious time. It was his clear duty to have so done. [41 C. J. 965; Graham v. King, 50 Mo. 22, 24; Vail v. Jacobs, 62 Mo. 130, 133; Hardware Co. v. Brownlee, 186 Mo. 621, 629.]

But it is argued that the defendant Cecil A. Hart was an innocent purchaser at the abortive trustee's sale, and therefore should not be permitted to suffer by the vitiating of the sale. So far as we see from the record before us, the bidder or purchaser loses nothing, in the event the sale be set aside, except an unconscionable advantage,

and this at the expense and loss of the respective parties to the deed of trust. Such a circumstance is not sufficient to stay the hand, or move the conscience, of a court of equity. We are of opinion that the learned trial chancellor erred in his findings and decree.

It follows that the judgment *nisi* must be reversed, and that the cause must be remanded to the Circuit Court of Douglas County, with directions to enter a judgment setting aside the abortive trustee's sale of September 25, 1925, and the trustee's deed of said date, executed by W. A. Clinkingbeard, Sheriff of Douglas County and substitute trustee, and purporting to convey the lands in controversy to the defendant Cecil A. Hart; that the defendant W. A. Clinkingbeard be ordered to return and turn over to defendant Cecil A. Hart the purchase price, or consideration, of $280 paid for said purported and ineffective trustee's deed; and that it be further ordered by and in said judgment that the deed of trust, dated November 15, 1922, and executed by H. W. Axtell and Lilly Axtell, husband and wife, described in plaintiff's petition herein, be reinstated of full force and effect, and that said deed of trust be foreclosed, as prayed in said petition, and that the lands described therein be sold, in the manner prescribed by law, in satisfaction of the amount of the debt found and adjudged by said circuit court to be due and owing to plaintiff from said H. W. Axtell and Lilly Axtell upon the promissory note described in, and secured by, said deed of trust. It is so ordered. *Lindsay* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur.