No. 73,575

RESOLUTION TRUST CORPORATION, as Receiver of Madison County Federal Savings and Loan Association, *Appellee/Cross-Appellant*, v. FRED J. ATCHITY, JR., *Appellant/Cross-Appellee.*

(913 P.2d 162)

Opinion filed March 15, 1996.

*Teresa A. Reinking*, of Husch & Eppenberger, of Kansas City, Missouri, argued the cause, and *Susan Linden McGreevy*, of the same firm, was with her on the briefs for appellant/cross-appellee.

*Taylor Fields*, of Fields & Brown, of Kansas City, Missouri, argued the cause, and *Brendon W. Webb* and *David Bowers*, of the same firm, were with him on the briefs for appellee/cross-appellant.

The opinion of the court was delivered by

ABBOTT, J.: The appellee/cross-appellant, Resolution Trust Corporation (RTC), was awarded judgment against the appellant, Fred J. Atchity, Jr., in Illinois for $1,109,563.79. The basis of that judgment was a loan secured by a deed of trust on property located in Kansas City, Missouri. RTC sold this real estate in Missouri using a statutory procedure for a nonjudicial sale. At the foreclosure, RTC purchased the property for $340,000.

The Illinois judgment was then filed in Missouri and later in Kansas. The District Court of Johnson County reduced the judgment by $105,711, relying on equitable power under K.S.A. 60-260(b)(5), and holding the property in Missouri had not been sold for fair value.

The appellant appealed the trial court's decision, claiming the credit given was too low. RTC cross-appealed, contending that the trial court allowed the appellant to collaterally attack the foreign judgment and that the trial court used Kansas law rather than Missouri law in determining the adequacy of the foreclosure. (There were originally three defendants in this case. One of the defendants filed bankruptcy, and the other defendant settled with RTC. The only appellant in this case is the named defendant, Fred J. Atchity, Jr.)

By way of background, the original defendants in this case formed a partnership in 1983 known as the Jacob Loose Mansion. During his lifetime, Jacob Loose was a highly successful Kansas City businessman and community leader. He built a mansion commensurate with his wealth and position in the community in a neighborhood of his peers. Over the years, the neighborhood deteriorated and became run down. The sale of drugs and prostitution in the area were common. The mansion was uninhabited by humans. The windows were broken and a large hole was in the roof. Wild birds occupied the house.

The partnership purchased the mansion in 1984 for $225,000. The partnership then spent over $1,000,000 restoring and modernizing the mansion for commercial office space. Most of the purchase price and restoration-modernizing cost were financed by Madison County Federal Savings & Loan. The partnership had a

high debt to equity ratio; it had only put down 10-15% of the loan as opposed to 25-30%, which was typical in this type of transaction.

When the original defendants bought the property, one of their reasons for doing so was historic tax credits. Further, the defendants were able to receive depreciation on the property and use any partnership losses as tax deductions.

However, the Tax Reform Act of 1986 made the investment less desirable, and all but one of the partners ceased making cash contributions to cover losses. The partnership slipped behind on its payments on the Madison loan. Madison was taken over by RTC. Shortly before oral argument, RTC sold its interest in the loan and judgment to the Asset Recovery and Management Company which has been substituted for RTC. For clarity, we will continue to refer to RTC, even though it is no longer the real party in interest.

On April 24, 1992, the RTC took judgment against the partnership, individual partners, and their spouses who had guaranteed the note in Madison County, Illinois, for $1,109,563 (the Illinois judgment). In order to collect this judgment, RTC decided to foreclose on the Missouri property. In order to prepare for the non-judicial statutory foreclosure sale, RTC obtained a preforeclosure appraisal on the property from Bliss and Associates Incorporated. On August 10, 1992, Bliss appraised the property at $400,000. The partnership also had an appraisal of the property performed by H.V.A.C. Inc. The H.V.A.C. appraisal was not a complete appraisal with background information, but was an opinion letter which stated that the building was worth $1,071,000 in June 1992.

James Tippin was chosen as successor trustee to conduct the statutory foreclosure sale on the mansion property. The nonjudicial statutory foreclosure sale was conducted in Missouri on September 24, 1992. RTC bid $340,000 for the property at the foreclosure sale, which was 15% below the property's appraised value of $400,000. Tippin testified that he considered the price he accepted from RTC for the property as fair in light of the preforeclosure appraisal. The deficiency between the judgment and the property acting as security was $769,563, plus interest.

The Illinois judgment was registered in Jackson County, Missouri, on December 11, 1992. On January 19, 1993, RTC registered

the Illinois judgment in the District Court of Johnson County, Kansas, under the Uniform Enforcement of Foreign Judgments Act, K.S.A. 60-3001 *et seq.*

Pursuant to K.S.A. 60-260(b)(5), the defendants asked the trial court to grant partial relief from the Illinois judgment, contending that it reflected an inequitable judgment because the property had been sold below value at the foreclosure sale, thereby leaving a large deficiency. The trial court ruled that it had broad discretion to grant equitable relief to the defendants under K.S.A. 60-260(b)(5). The trial court found that the property had not been sold for fair value because it had been undervalued by the trustee. Based on the trial court's determination of the value of the house and what would have been an appropriate RTC bid, the trial court credited an extra $105,711 to the Kansas (Illinois) judgment as the amount the property was undervalued. Under the trial court's ruling, the defendants' deficiency judgment was reduced to $663,812 plus interest.

One of the defendants, the appellant herein, appealed the trial court's equitable relief from the judgment and credit toward the deficiency judgment, claiming the credit given was too low. According to the appellant, the trial court used the wrong occupancy rate when determining the value of the property and improperly discounted the property's value, based on the neighborhood and environmental problems of the property and on the fact that RTC, the only bidder, was not in the business of managing property.

The plaintiff, RTC, cross-appeals. The plaintiff contends that the trial court erred by allowing the defendants to collaterally attack in equity the Illinois judgment and the Missouri foreclosure under K.S.A. 60-260(b)(5). Further, the plaintiff contends that the trial court erred by examining the adequacy of the foreclosure under the law of Kansas instead of under the law of Missouri, where the foreclosure occurred.

The plaintiff registered the Illinois judgment in Kansas under the Uniform Enforcement of Foreign Judgments Act. K.S.A. 60-3002 states in pertinent part:

"The clerk of the district court shall treat the foreign judgment in the same manner as a judgment of the district court of this state. A judgment so filed has the same

effect and is subject to the same procedures, defenses and proceedings as a judgment of a district court of this state and may be enforced or satisfied in like manner."

Treating the Illinois judgment as a Kansas judgment, the defendants filed for equitable relief with the district court under K.S.A. 60-260(b)(5). This statute states:

"On motion and upon such terms as are just, the court may relieve a party or said party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, *or it is no longer equitable that the judgment should have prospective application*; . . . The motion shall be made within a reasonable time . . . A motion under this subsection (b) does not affect the finality of a judgment or suspend its operation. This section does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in K.S.A. 60-309 or to set aside a judgment for fraud upon the court." (Emphasis added.)

Pursuant to K.S.A. 60-260(b)(5), the district court evaluated the Missouri foreclosure. The district court found that the property was not sold for a fair price. Thus, it found that the Illinois judgment against the defendants was inequitable because the defendants had not been credited the fair value of the property which was foreclosed upon. As such, the trial court calculated a fair value of the property and used this amount to credit the Illinois judgment registered in Kansas.

RTC contends that the district court did not have the authority to grant the defendants relief, as it did under 60-260(b)(5), for three reasons. First, the trial court improperly evaluated the adequacy of the foreclosure bid under Kansas law, not Missouri law. Since the property was located in Missouri and the foreclosure occurred in Missouri, RTC contends that the trial court should have applied Missouri law to determine if the foreclosure was equitable. If it had done so, RTC argues that the court would have found the foreclosure bid adequate in comparison to the value of the property. Second, RTC contends that by granting this equitable relief under 60-260(b)(5), the trial court impermissibly allowed the defendants to collaterally attack the Illinois judgment and the Mis-

souri foreclosure. Finally, RTC contends that the district court impermissibly allowed the defendants to proceed in equity under 60-260(b)(5) when the defendants had a legal remedy available in Missouri.

## JURISDICTION AND CONFLICT OF LAWS

RTC contends that the trial court incorrectly applied Kansas law in evaluating the equities of the foreclosure when it should have applied Missouri law. The real property was located in Missouri, and the trustee carried out the nonjudicial statutory foreclosure pursuant to Missouri law. According to RTC, Missouri courts do not modify foreclosure proceedings once they are complete. In order to set aside a foreclosure sale of real estate in Missouri, the complaining party must show substantial evidence of sale irregularities. *West v. Axtell*, 322 Mo. 401, 417-18, 17 S.W.2d 328 (1929). The trial court did not use this Missouri standard to evaluate the foreclosure. Rather, the trial court considered all the factors of the property to determine if it had been sold at foreclosure for "fair value." This, according to RTC, is a Kansas standard, promulgated under *Olathe Bank v. Mann*, 252 Kan. 351, 361, 845 P.2d 639 (1993).

The appellant argues that the trial court was not required to consider Missouri law in evaluating the foreclosure. The appellant contends that the trial court was not per se reviewing a Missouri statutory foreclosure. Rather, it was reviewing a Kansas judgment under K.S.A. 60-3002, which states that a foreign judgment filed in Kansas "has the same effect and is subject to the same procedures, defenses and proceedings as a judgment of a district court of this state and may be enforced or satisfied in like manner." Thus, the appellant contends that the district court could grant the defendants equitable relief from the Kansas (Illinois) judgment under K.S.A. 60-260(b)(5). As such, according to the appellant, the trial court had every right to apply the Kansas factor test under *Mann* to evaluate the equities of the Missouri foreclosure because Missouri law is inapplicable to a Kansas court's review of a Kansas judgment.

The questions as to which state law applies and whether the state law has been properly interpreted are questions of law. This court has unlimited review of the district court's interpretation of law. *Memorial Hospital Ass'n, Inc. v. Knutson*, 239 Kan. 663, 668, 722 P.2d 1093 (1986).

As we view the record, the trial court intended to apply Missouri law in its evaluation of the foreclosure action. However, this is not, in fact, what the trial court did. In its journal entry on this case, the trial court specifically stated:

"7. On February 17, 1993 the defendants herein filed a Motion for Relief From Judgment on the following . . . grounds: . . . . ii) the foreclosure sale in Missouri was irregular, resulting in harm to the defendants, and iii) under Missouri law the property was not sold at a fair price and the defendants were damaged. Thus, it is not equitable to enforce the Kansas Judgment.

"8. This Court concludes that pursuant to K.S.A. 60-260(b)(5), it has equitable powers to determine the amount that the RTC is entitled to collect of the Illinois Judgment which is registered here.

. . . .

"IT IS FURTHER ORDERED BY THE COURT that in light of the Court's finding that evidence of irregularity and harm is irrelevant to this proceeding, Defendants' Motion for Relief From Judgment on the grounds the foreclosure sale in Missouri was irregular and harmful to the defendants is Denied.

"IT IS FURTHER ORDERED BY THIS COURT that the defendants Motion for Relief From Judgment on the grounds that under Missouri law the property was not sold for a fair price, resulting in damage to the defendants, is sustained in part and in addition to the [$340,000] sale price, the defendants are entitled to a credit against the Judgment as registered, and that additional credit in the amount of [$105,711]. Thus, a credit in the sum of [$455,711] should be applied to the Illinois Judgment as of September 24, 1993."

Furthermore, in the trial transcript, the court and the parties had the following discussion.

"MR. BARRON [Plaintiff's attorney]: Well, Your Honor, I think I can speak to that pretty directly. This action, again, is governed by Missouri law, as has been determined by this Court at both the November 1993 hearing and the August 1994 pretrial conference.

. . . .

"MR. BARRON: It's not an equitable proceeding for a deficiency judgment. Rather, plaintiffs only . . . registered a foreign judgment with the court. . . .

"Therefore, the only plausible issues before this Court being whether defendants can establish substantial evidence of irregularities and resulting harm in

order to obtain the only remedy afforded under Missouri law; that being, set aside the foreclosure. . . .

"THE COURT: I don't think they're asking for that.

"MR. BARRON: But they have nothing [else] to ask for under governing Missouri law. That is the point. Your Honor, as we have narrowed the issues, defendants can't ask for [anything] else under governing Missouri law. The only affordable remedy to defendant mortgagee, when the defendant mortgagee claims that the foreclosure sale evidenced irregularities, is that the foreclosure sale be set aside.

"THE COURT: And correct me if you think I'm wrong, and I'm not trying to take away Mr. Smith's thunder, but I believe the theory under which the defendants are proceeding is that if they can establish *under Missouri law that the property was not sold at a fair price and that they were damaged, which is automatic if they prove that, then it's inequitable. It's not equitable to enforce the Kansas judgment.* I mean, that I think is—isn't that correct, Mr. Smith?

"MR. SMITH: Yes, Your Honor. And in addition to that, I think we're going to show that the foreclosure was irregular, and that the transfer of property to the RTC was not even under the foreclosure, and we're going to be dealing not only with the equitable language but with the payment language. We're going to show, Your Honor, that the foreclosure was defective. The RTC knew it.

"THE COURT: Excuse me. *The only thing I'm interested in is whether or not it was sold at fair value. Again, I'll find, as a matter of law, that evidence of other irregularities are not relevant to this action because I have no authority to deal with those.*

. . . .

"THE COURT: Go to Missouri if you want to do that. I'm making that ruling now, as a matter of law, the only issue we're trying is whether or not the sale was at fair value.

[The defendants then made arguments concerning the procedural irregularities of the sale.]

"THE COURT: Well, I don't think any part of that is relevant. In the first place, we had a pretrial in this case in August, and *the two issues that we identified then for trial: Was the sale irregular and did damages result?* That's the only two issues.

. . . .

"THE COURT: But that's what we identified as issues. And the key—I mean, your key, if . . . you're going to win this case, is equity. The only way you're going to get to equity if you convince me that RTC took this property which had substantial value, in excess of $340,000, which they've agreed to credit you against your judgment.

. . . .

"MR. BARRON: Your Honor, I feel I need the opportunity to respond to that. At the August 1994 hearing, pretrial conference, rather, this Court, based upon plaintiff Resolution Trust Corporation memorandum in law regarding the right to

a deficiency judgment in Kansas, clearly determined that, as Your Honor noted a moment ago, the issues today before the court, as narrowed, are simply whether defendants can establish substantial evidence of irregularities in the foreclosure sale and the resulting harm. The value element, which defendants seek to prove, is in fact the element of harm. If and only if defendants establish substantial evidence of irregularities under governing Missouri law, as has been determined by this Court, are defendants entitled any relief whatsoever, regardless of the amount of value of evidence which is put on today. This Court has already made the determination, and it's been fully briefed by the parties. In fact, defendants conceded at the pretrial conference that is the scope of this hearing.

"And RTC's supplemental suggestions, which were filed on November 18th, are straightforwardly to the point that, as narrowed and given, the only relief available is that under Missouri law, which again the Court has ruled governs this action. Defendants are only entitled—or only potentially entitled to the relief of setting aside the foreclosure sale. This is simply the only remedy afforded under Missouri law.

"Defendants today have the misconception of arguing Kansas law. Kansas law simply does not apply to this action anymore as narrowed. That has been determined by the Court, that's been fully briefed by the parties and that was conceded by defendants at the August 1994 pretrial conference.

"Therefore, I simply want to make absolutely clear for the record, and I would be happy to engage in further argument and provide extensive citation, or case authority to support our position, *that this Court, absolutely, under Missouri law lacks subject matter jurisdiction for the reason, one, that it cannot grant the only relief entitled—that defendant may be entitled to under Missouri law*; and, secondly, the defendants have failed to join necessary parties, which are required to be joined, in order to seek the relief that defendants are entitled to, or may be entitled to under Missouri law.

. . . .

"THE COURT: Well, the motion to dismiss is overruled. I am going to, however, *limit the irregularity issue to issues of value.*

. . . .

"MR. SMITH: Even though the Court has ruled for the record, I think the Court has ruled on Alexander v. Weaver, 3 Kansas Appeal, 2d 298, that clearly provides 'foreign judgments filed in Kansas under the Uniform Enforcement of Foreign Judgments Act are treated the same as Kansas judgments and are considered Kansas judgments.' And the Court held that under the UFJA, 'a judgment filed in a Kansas court has the same effect and is subject to the same procedures, defenses and proceedings as a judgment of a district court of this state and may [be] enforced or satisfied in like manner,' . . . So, it was erroneous that we were relying on Missouri law. We were relying on Kansas law. We are prepared to proceed.

"MR. BARRON: Your Honor, I want to make one final statement for the record. Again, it has been conclusively determined that Missouri law governs this

action. Your Honor himself made that determination on the November 1993 and the August 1994 hearing. I've already stated what Missouri law requires. *I will state RTC's objection for the record to the hearing proceeding solely on the issue of value.* Thank you, Your Honor.

"THE COURT: *Just as long as everyone understands that the law with respect to getting at the value question is Missouri law.* Any issues regarding the enforceability of the registered judgment are Kansas law issues. So, we are proceeding under K.S.A. 60-260(b)(5), I believe is the only section that we're proceeding under.

"MR. BARRON: Your Honor, previously—if you would permit me. Your Honor previously made the determination that because this Court is allowing argument as to the propriety of a foreclosure sale conducted in Missouri, where the property is located in Missouri, the only law that can conceivably [govern] this action, as a choice of law [matter], is Missouri law. Kansas has no connection to this suit other than the fact that RTC registered its judgment in Kansas. To apply Kansas law where Kansas has no connection to the suit, wherein this Court has already made the determination Missouri law governs the action, is unfortunately a mistake, and I would again note our objection for the record." (Emphasis added.)

Thus, it appears the trial court intended it apply Missouri law to its evaluation of the foreclosure. According to the trial court, if the property was not sold at fair price under Missouri law, then it was not equitable under 60-260(b)(5) to enforce the Illinois judgment as a registered Kansas judgment without greater credit for the foreclosed property. It is also clear that the trial court was correct in its determination that Missouri law should apply to its evaluation of the Missouri foreclosure even if the evaluation was done to grant relief from an inequitable Kansas judgment.

Choice of law problems occur when a transaction touches more than one state and the question arises as to which state's laws will govern. To determine which state's laws govern, the forum court uses its own choice of law methodology. In *Mark Twain Kansas City Bank v. Cates*, 248 Kan. 700, 705, 810 P.2d 1154 (1991), this court seemed to adopt by default the policies of *lex loci rei sitae* which allows for local laws to determine the rights and obligations of the parties to real property and *lex loci* which provides that a security interest in land is governed by the local law of the situs of the land.

In *Mark Twain*, this court addressed whether a mortgage secured a particular loan. 248 Kan. at 705-06. The mortgage contract was transacted in Missouri, but the property which potentially secured the mortgage was located in Kansas. The trial court noted the general rule is that "foreclosure of [a] mortgage must be in accordance with the procedural law of the state where the property is located." 248 Kan. at 706. This court did not quarrel with this general rule.

Under this general rule, the law of the state of Missouri should be used to evaluate the foreclosure. This choice of law methodology, applying the law of the state where the real estate is located (Missouri), seems especially helpful in this case. Kansas has no connection to this property except that the manager/owner of the property lives in Kansas. The loan which the property secured was not transacted in Kansas. The property is not located in Kansas. The foreclosure did not occur in Kansas. Thus, Missouri law should be applied to evaluate the foreclosure.

The next question is how this choice of law methodology interrelates with K.S.A. 60-260(b)(5). Under 60-260(b)(5), a trial court can set aside or modify any inequitable judgment. Thus, the defendants argue that even if the foreclosure is equitable in Missouri, it is not equitable under Kansas foreclosure law and should be set aside under 60-260(b)(5). However, this position is contrary to Kansas' choice of law methodology. Since the judgment is treated as a Kansas judgment, then the Kansas "choice of law" law applies to the judgment, and this Kansas "choice of law" law indicates that Missouri law should be used to evaluate foreclosures conducted in Missouri. Thus, under K.S.A. 60-260, this court should look to Missouri law to evaluate the foreclosure. If the foreclosure is not valid, then it is inequitable under 60-260(b)(5) to enforce the Kansas (Illinois) judgment without proper credit for the foreclosed property. Based on the journal entry and the comments it made at the trial, the district court also thought that Missouri law should be used to evaluate the foreclosure.

Apparently, RTC is trying to argue that the trial court, in fact, applied Kansas law, not Missouri law, in evaluating the foreclosure because it used the fair value/factor test. In evaluating the Missouri

foreclosure, the trial court considered all the factors of the property to determine if it had been sold for a fair price. This evaluation, according to RTC, was conducted pursuant to a Kansas standard, promulgated in *Olathe Bank v. Mann*, 252 Kan. 351, 361, 845 P.2d 639 (1993). Whereas, in Missouri, the only way to set aside a foreclosure is for the complaining party to show substantial evidence of irregularities concerning the sale. *West v. Axtell*, 322 Mo. 401, 417-18, 17 S.W. 2d 328 (1929). Yet in this case, the trial court found that evidence as to irregularities of the sale were Missouri issues and irrelevant to this case. The appellant seems to concede that the trial court, in fact, applied Kansas law when it evaluated the foreclosure and argues that the trial court was not required to consider Missouri law. The trial court seemed to conclude that a foreclosure could be "irregular" under Missouri law if the property was not sold for a fair price. The district court misinterpreted the governing Missouri law.

In *Boatmen's Bank v. Community Interiors, Inc.*, 721 S.W.2d 72 (Mo. App. 1986), the mortgagee foreclosed on the mortgagors' property. Based on the sale price of the property, the mortgagee sought a deficiency judgment against the mortgagors. The mortgagors filed a counterclaim seeking to set aside the foreclosure. The court entered a judgment in favor of the mortgagee on the deficiency judgment. In affirming the district court, the Missouri Court of Appeals stated:

"To set aside a foreclosure sale, evidence of an inadequate sale price generally must be accompanied by substantial evidence that, for example, the sale was held at an unusual hour, the trustee abused his discretion in exercising his power of sale, or there was unfairness or partiality in the conduct of the sale, and that the complaining party suffered harm as a result. *West v. Axtell*, 322 Mo. 401, 17 S.W.2d 328, 335 (1929). . . . Furthermore, we cannot say that the sale price here was so grossly inadequate as to compel us to set aside the sale on that ground alone. [Citation omitted.]" 721 S.W.2d at 78.

The difference between the amount the trustee sold the property for at the foreclosure and the amount the property had been appraised at was approximately $200,000. The Missouri court found that the consideration paid for the property at foreclosure, which was $200,000 less than the appraised value of the property,

was not grossly inadequate. Whereas, in this case, the trial court found that the property had been sold for an unfair price because it was sold for approximately $100,000 less than the value of the property. *See Hrovat v. Bingham*, 341 S.W.2d 365, 371 (Mo. 1960) ("[A]lthough no hard, fast rule can be established as to when the consideration, or rather the lack of it, reaches this stage of "grossness," a bid of from one-half to one-third of the market value is not, in and of itself, considered by the equity courts as falling into the 'gross inadequacy' class.")

Further, in *Mueller v. Simmons*, 634 S.W.2d 533 (Mo.App. 1982), the plaintiff foreclosed on the defendant's property, and the defendant claimed there were problems with the foreclosure. The plaintiff wished to sell the property to another buyer, so she brought an action to quiet title. The defendant counterclaimed, alleging that the foreclosure was wrongful and requesting that it be set aside. The district court found that the foreclosure was not erroneous. 634 S.W.2d at 535. The Missouri Court of Appeals affirmed, stating:

"It has long been established that inadequacy of consideration alone will not justify setting aside a foreclosure sale that was fairly and lawfully conducted, without fraud or partiality and with full opportunity for competitive bidding." 634 S.W.2d at 536 (citing *Farris v. Hendrichs*, 413 S.W.2d 185, 190 [Mo. 1967]; *Trotter v. Carter*, 353 Mo. 708, 183 S.W.2d 898, 902 [1944]; *Carondelet Savings & Loan Association v. Boyer*, 595 S.W.2d 744, 747 [Mo. App. 1980]).

However, the court also stated:

"We find no evidence of unfairness, fraud or partiality associated with this foreclosure sale, which, combined with the sale price, would justify abrogating the sale. Nor do we regard the consideration to be so grossly inadequate as to compel us to set aside the sale on that ground alone." 634 S.W.2d at 536. (Emphasis added.)

Under Missouri law, it does not appear (and the appellant seems to so concede) that a judgment may be modified by applying credit toward the judgment in the amount the property was undervalued. Missouri either affirms a foreclosure in whole or sets the entire foreclosure aside. See *Lindell Trust Co. v. Lieberman*, 825 S.W.2d 358, 360-01 (Mo. App. 1992) ("As long as the sale stands, the sum for which the property sold has been held *conclusive* for the pur-

pose of determining the amount of deficiency. [Citation omitted.] Where fraud or unfair dealings surrounds the sale the proper course of actions is to *set aside* the sale in equity." [Emphasis added.])

Here, the trial court did not set the foreclosure sale aside by finding that the price paid for the property was grossly inadequate or that fraud or partiality or any other irregularity was associated with the sale. In fact, the trial court refused to hear any evidence regarding sale irregularities, even though this is precisely the type of evidence which the Missouri courts require to set aside a foreclosure. The trial court stated that such evidence was irrelevant and that it had no authority to deal with the sale irregularities. Instead, the trial court merely modified the deficiency judgment by finding that the property was not sold for a fair value. Missouri law does not appear to credit a deficiency judgment if the property was sold for an "unfair value." See *Lindell Trust Co.*, 825 S.W.2d at 360-61. Thus, it appears that the trial court applied Missouri law in name only. In actuality, the trial court applied the Kansas fair value standard as enunciated in *Mann* when it evaluated the foreclosure. We are satisfied that only Missouri law may be used to establish the nature and validity of interests in or liens upon Missouri land. Here, the Kansas trial judge recognized that he had no jurisdiction to decide the validity of the Missouri mortgage foreclosure and then proceeded to grant relief that is not available under Missouri law.

As pointed out in Young, *Mortgage & Party Autonomy In Choice of Law*, 45 Ark. L. Rev. 345 (1992), mortgage transactions (including deeds of trust) involve both contract and conveyance. The underlying contractual allegation (such as the promissory note) and some covenants in the mortgage are subject to the same choice of law principles as apply in any other contract action. However, the substantive as well as procedural law of the situs applies to a mortgage foreclosure. 45 Ark. Rev. 349 (citing *Worcester &c. Sav. Inst. v. Sommerville Milling Co.*, 101 N.H. 307, 308, 141 A.2d 885 [1958]; *accord Deaton v. Vise et al.*, 186 Tenn. 364, 375, 210 S.W.2d 665 [1948]; Restatement [Second] of Conflict of Laws §§

228, 229 [1971]; Restatement [First] of Conflict of Laws §§ 225, 227 [1934]).

Young comments in his article:

"The distinction between the contract and property aspects of a mortgage transaction serves a useful purpose. Permitting the parties to select the law to govern the underlying transaction, including the mortgage itself insofar as the mortgage is a contract giving rise to personal rights and duties, gives effect to the expectations of the parties in an increasingly complex world of multistate and multinational real estate transactions. On the other hand, *recognizing the primacy of the law of the situs to determine the nature and extent of the mortgagee's interest respects the fact that the federalism of the United States and the international nation-state system is founded on territorial sovereignty*. Confusion is likely if the principles appropriate to one aspect of a mortgage transaction are applied to another." 45 Ark. L. Rev. at 352. (Emphasis added.)

The mortgage in this case is rationally related to Missouri, where the property is located. While Kansas has jurisdiction to construe a deficiency judgment, this case is so intertwined with the Missouri mortgage that the trial judge necessarily had to construe Missouri substantive and procedural law concerning the nature and validity of the lien on Missouri land. In order to grant any relief, the trial court should have applied the law of Missouri concerning statutory foreclosures. The only remedy available in Missouri is to set aside the sale. Kansas has no jurisdiction to set aside a Missouri foreclosure sale of real property. If the appellant is to receive relief in this case, be it partial or total, that relief must come from Missouri where the real estate is located and the statutory sale took place.

Based on the outcome of this issue, a discussion of the issues concerning collateral attack and equitable remedy is not necessary.

Reversed and remanded with directions to set aside the district court's judgment granting equitable relief to appellant.