No. 23,395.

W. J. HOLMAN, *Appellant,* v. ETHEL B. JOSLIN et al., *Appellees.*

### SYLLABUS BY THE COURT.

SPECIFIC PERFORMANCE—*Sale of Land—Time Essence of Contract—Acceptance of Payments After Due—Forfeiture Inequitable.* Although the acceptance of a single installment on the purchase price after due does not necessarily effect a waiver by the vendor of the provision of a contract for the sale of land making time essential, yet if enough instances of the kind occur to establish a course of dealing inconsistent with insistence on a strict adherence to the letter of the agreement in that regard, he cannot thereafter declare a forfeiture for a failure to make a payment promptly without first giving notice of an intention to insist thereon; and in a particular case two such instances may be sufficient for the purpose where but two deferred payments have become due and where a forfeiture would be inequitable.

Appeal from Stevens district court; CHARLES E. VANCE, judge. Opinion filed February 11, 1922. Reversed.

*F. Dumont Smith,* of Hutchinson, for the appellant.
*John W. Davis,* of Greensburg, for the appellees.

The opinion of the court was delivered by

MASON, J.: On February 1, 1915, E. W. Joslin and Frank White entered into a written agreement for the sale of a quarter section of land by the former to the latter for $1,200, of which $250 was paid at the time, the remainder to be paid in ten annual installments bearing 7 per cent interest, the last one amounting to $50 and the others to $100 each. On December 2, 1916, White assigned his rights under the contract to W. J. Holman. The installment due February 1, 1916, was paid on February 20, 1916; that due February 1, 1917, was paid February 28, 1917. On March 29, 1918, Holman tendered the installment due February 1, 1918, which was refused, Joslin "pretending to have canceled" the contract on account of the delay. Joslin died in the fall of 1918. On September 11, 1919, Holman brought this action against his heirs and administrator, asking specific performance of the contract. A demurrer to his petition stating these facts was sustained, and he appeals.

The defendants assert that by the plaintiff's failure to meet the 1918 installment promptly all his rights with reference to the land were lost. The plaintiff contends that there was a waiver of prompt payment, that the delay under the circumstances was not sufficient to forfeit his right to purchase the land, and that in view of all the circumstances, including the amount already paid and the extent

to which the land had been improved, a forfeiture would be inequitable. The contract contained these provisions:

"And it is hereby agreed and covenanted by the parties hereto, that time and punctuality are material and essential ingredients in this contract. And in case the purchaser shall fail to make the payments aforesaid or any of them punctually, as above mentioned, or shall fail to perform and complete each and all of the purchaser's agreements and stipulations aforesaid, strictly and literally, without failure or default, then this contract, so far as it may bind said grantor, shall become utterly null and void, and all rights and interests hereby created, or then existing in favor of, or derived from, the purchaser, shall utterly cease and determine, and the right of possession and all equitable and legal interests in said premises, shall revert to and revest in said grantor, without any declaration or forfeiture or act of re-entry, or any other act by said grantor to be performed, and without any right of said purchaser of reclamation or compensation for moneys paid or services performed, as absolutely, fully and perfectly, as if this contract had never been made.

"And it is further agreed that the said grantor shall have the right immediately upon the failure of the purchaser to comply with the stipulations of this contract to enter upon the land and premises aforesaid, and take immediate possession thereof, together with the improvements and appurtenances thereto belonging. And the said purchaser hereby covenants and agrees that the purchaser will thereupon surrender to said grantor the said land and premises and appurtenances without delay or hindrance, and that no court shall relieve the purchaser from the consequences of a failure to comply and literally with this contract."

The petition set out these facts among others: Upon the refusal of Joslin to accept the 1918 installment the plaintiff tendered full payment of the balance of the purchase price, which was refused. The plaintiff also offered to pay out in full at the time of the 1917 payment, but Joslin refused to accept the money, saying, "This is a good contract; let it ride." No objection was made by Joslin to accepting the 1916 and 1917 payments, although each was made 19 days or more after maturity. Plaintiff and Joslin were residents of Hugoton, a town of five or six hundred people, and met each other almost daily between the first days of February and of April, 1918, and during that period Joslin made no reference to the default and no request for payment. The plaintiff simply overlooked the date of payment, and as soon as it was recalled to his memory he made the tender. The land was worth $1,200 when the contract was entered into. It was worth $2,500 when the assignment to the plaintiff was made. Thereafter and prior to February 29, 1918, the plaintiff made lasting and valuable improvements worth $2,500. The plaintiff owned the other three quarters in the section and im-

proved them partly because of his owning this one. By reason of the improvements referred to the tract in controversy was worth $5,000 at the time of the attempted forfeiture and $8,000 in September, 1920.

There is a difference of opinion as to the strict enforceability of such a contract as that here involved—that is, whether equity will give relief against its provisions without other basis than their severity. In an extensive note on the subject it is said:

"The true doctrine underlying relief from forfeitures under contracts for the sale of land where time is made of the essence, we believe, is this: If the contract is executory at the time of the default, and the purchase price or no considerable part of it has been paid, and valuable improvements have not been made on the premises, then the defaulting vendee has no claim to equitable relief. Performance on his part is a condition precedent to performance on the part of the vendor. But if the purchase of the property has been accompanied with a long enjoyment, and the expenditure of money on the premises, or the payment of a considerable portion of the purchase price, then a default in the time of performance by the vendee will not be permitted to work a forfeiture against him in equity, unless there has been such a delay as to show an abandonment, or to affect the circumstances of the parties, or the property involved." (Note, 86 A. S. R. 51.)

In a case cited in that note, involving a contract in which time was not in terms made essential, but in which it was provided that a forfeiture should result from a default in payment, a provision which has been held to make time of payment of the essence of the agreement (39 Cyc. 1369), this language was used:

"The proposition which is maintained by the defendant's counsel, is a bold and startling one. If that proposition be the law of the court of equity, then a purchaser and holder of lands, under such a contract as this, may have paid, upon purchasing a farm, $1,000 annually, for many years, may have expended thousands of dollars in improvements, may be in truth one of the wealthiest farmers and land-holders in the country, and may, from forgetfulness, or some other accidental cause, (which of course is not susceptible of other proof than his own assertion,) omit to pay the last installment of $1,000, by the exact hour prescribed by the contract; and although he may be ready with the money, an hour after the default, and offer it to his inexorable creditor, yet he may be doomed to see the whole of his estate, the reward of years of toil and industry, swept from him in a moment, by this unyielding rule of law; and may invoke in vain the benign powers of the court of chancery for his relief. This consideration gains strength immeasurably, when it is remembered that a large portion of the land contracts in the western section of this state, are framed with a provision similar to the one in the contract in this case; which clothes the holders of such contracts with power, (if the alleged construction of this contract be the true one,) to insist upon the forfeiture of every farm in that prosperous and wealthy region of the country, upon the

unexplained failure to pay merely a single dollar, upon the contract, at the
exact time prescribed therein. It seems to me, that this is too monstrous a
proposition to be maintained in the nineteenth century. For while the ap-
plication of this rule to the case of a contract which is not executed, by the
payment of any part of the purchase money, is strictly just and proper, it
is clear that to apply it to cases such as I have supposed, or to the very case
at bar, would work the greatest injustice; and would require the court of
chancery to be the organ and instrument of every Shylock, who chose to insist
upon the rigorous exaction of his pound of flesh.

"It is said, that it is not the province of the court of chancery, any more
than a court of law, to make contracts for parties, but to enforce them. This
is true, as a *general proposition*. But it is also true, that the court of
chancery looks to the *substance of a contract;* and when the substance of a
contract is fulfilled, and the *general* intention of the parties carried into
effect, the court relieves against any forfeiture or penalty, inserted for the
purpose of enforcing the contract. (See Jeremy on Eq. Juris. 470; Fonbl. Eq.
130, 4th Am. ed.) It was upon this principle, that upon the forfeiture of the
penalty of a penal bond, the court of chancery was accustomed to relieve
against the penalty, upon the payment of the sum really due, and the interest
thereon, before the statute had rendered a recourse to a court of equity neces-
sary." (*Edgerton v. Peckham,* 11 Paige [N. Y.] 352, 357.)

On the other hand, the general rule has been thus stated:

"Where by the terms of a contract of sale of land time is made of the
essence of the contract, failure of the purchaser to pay the purchase-money,
or any installment thereof, within the time specified, authorizes a rescission
by the vendor, or a forfeiture if the contract provides for it, . . . In the
absence of a statutory provision to the contrary, the contract may provide in
express terms that a default in performance by the purchaser shall work a
forfeiture of payments already made; and where the contract so provides it
would of course be unnecessary to return or offer to return payments made
as a condition precedent to a forfeiture of the contract for default by the
purchaser." (39 Cyc. 1369, 1381.)

This court has said:

"While contracts for the sale of land in which time is made of the
essence of the contract are valid and enforceable at law or in equity, yet
where the circumstances are such that it would be grossly inequitable to
enforce a forfeiture, courts of equity will, upon slight ground therefor, relieve
a party therefrom, and enforce the contract as merely one of sale." (*National
Land Co. v. Perry,* 23 Kan. 140.)

"It is well settled that contracts for the sale of land, when time is made
of the essence of the contract, are binding, and should be enforced by the
court, when there are no intervening circumstances that would make the en-
forcement inequitable; . . . But while time is made of the essence, yet
if there have been such things done between the parties in relation to the
contract as to lead one party to believe, and act upon the belief, that time
had been waived and that no forfeiture would be taken, since the doing

of said things under such belief would make it inequitable to allow a party to take a forfeiture, it has been held, that under such circumstances the contract ought to be so modified as to make it one of sale merely." (*Lumber Co. v. Horrigan,* 36 Kan. 387, 389.)

"It is needless to repeat and enlarge upon what this court has said so frequently to the effect that penalties and forfeitures are obnoxious to judicial minds, and that slight circumstances are eagerly seized to avoid their enforcement when the substantial rights of the parties insisting thereon can otherwise be adequately protected.". (*Geffert v. Geffert,* 98 Kan. 57, 59.)

It is well settled that where in a land contract time of payment is made essential the acceptance by the vendor out of time of a single deferred payment or even of more than one does not necessarily in and of itself waive the prompt mailing of future installments. (Note, 9 A. L. R. 1001; *Kliesen v. Mercantile Association,* 101 Kan. 138, 165 Pac. 650.) In the Kansas case just cited, however, the buyer returned the amount already paid so that the question involved was his right of rescission and not of forfeiture. The rule stated, however, is subject to a qualification which in the note already referred to (p. 1002) is thus expressed:

"If the vendor in a contract for the sale of land, whereby time is made of the essence, repeatedly receives payments after the date when they are due, and thereby establishes a course of dealing inconsistent with insistence on the strict performance of the contract, he cannot thereafter declare a forfeiture for a failure to make a payment promptly, unless he has given notice to the vendee of his intention to require prompt payment in the future."

How many instances of the acceptance of payments after maturity may be required to establish a course of dealing must depend upon the particular circumstances of each case. "While a waiver of a default in one payment would not operate as a waiver of a subsequent failure, the court should consider all the circumstances and the conduct of the parties in their dealings and treatment of the contract." (*Gray v. Pelton,* 67 Ore. 239, 244.) While here but two installments were accepted after maturity they were not only consecutive but they included all the deferred payments that had accrued before the one refused, and the only one after the assignment to the plaintiff. The fact that the only deferred payments yet made had been offered and accepted without objection nineteen and twenty-seven days respectively after the time fixed, was in our judgment sufficient, in the absence of anything to suggest a purpose on the part of the seller to insist upon a more literal compliance with the terms of the contract in the future, to establish a course of dealing on the basis of a substantial meeting of the re-

Holman v. Joslin.

quirement as to the time of payment, especially in view of the un-
conscionable profit that would accrue to the defendants and the
corresponding loss that would be inflicted upon the plaintiff by
allowing his rights to be forfeited for a delay in his third payment
not different in kind from that in the case of the other two.   It
cannot be said as a matter of law that two consecutive instances of
the acceptance of overdue payments, or any other definite number,
will always preclude the seller from insisting upon a forfeiture on
account of a failure to meet the next payment when due; but neither
can it be said as a matter of law that such result can never follow
from so few as two instances of the kind.   We hold the fact recited
in the petition to be sufficient if proved to justify a finding of fact
that strict compliance with the time requirement had been waived
(until notice to the contrary should be given) by the course of
dealing adopted.

The judgment is reversed, and the cause is remanded with direc-
tions to overrule the demurrer.

---

### OPINION DENYING A REHEARING.
(Filed March 11, 1922.)

SYLLABUS BY THE COURT.

CONTRACT—*Sale of Land—Default in Payments—Petition for Specific Perform-
ance by Vendee Not Demurrable*. Where the vendor declares a land con-
tract (in which time is made essential) forfeited for failure to meet a de-
ferred payment promptly, a petition in an action by the purchaser for
specific performance brought eighteen months later is not demurrable be-
cause not filed sooner, where it contains allegations inconsistent with the
theory that the delay indicated acquiescence or abandonment. And it is
held that allegations of that character were made in the petition in this case.

The opinion of the court was delivered by

MASON, J.: In a motion for a rehearing the defendants urge that
the demurrer to the petition was rightfully sustained because by de-
laying to bring suit for nearly eighteen months after his rights had
been declared forfeited the plaintiff acquiesced in the forfeiture and
abandoned any claim he might have had.   This point was over-
looked in the original opinion, partly because, although raised by the
defendants at the oral argument, it was not referred to in their brief,
and partly because it was overshadowed by what seemed a much
more difficult question.   Even a relatively short delay to sue is
sometimes held to bar an action for specific performance where it
indicates acquiescence or abandonment. (*Fowler v. Marshall*, 29
Kan. 665; 36 Cyc. 728.)   We do not consider a delay of eighteen

months fatal in the present case because any supposition that it was due to the plaintiff acquiescing in the cancellation of the contract is negatived by allegations of the existence of these facts: Shortly after Joslin's refusal to accept the overdue payment the plaintiff tendered the full amount of the unpaid purchase price. Joslin having declared the contract forfeited, "ever since, until the time of his death, refused to acknowledge or carry out the same." The plaintiff was at all times able, ready and willing to pay the balance due. Joslin having died in the fall of 1918, the plaintiff made a demand (the time of which however is not shown) upon his heirs, the defendants, for a compliance with the contract. After the attempted forfeiture the plaintiff continued to occupy, cultivate and improve the land. The suggestion that upon the face of the petition the plaintiff's desire for the enforcement of the contract is due to an increase in the value of the land between the declaration of forfeiture and the bringing of the action is inconsistent with his allegation of an increase in value from $1,200 to $5,000 due in part to his having made improvements to the amount of $2,500.

The defendants in their motion also suggest that the fact of the plaintiff having made improvements upon the land is not involved in this case—that questions in that regard can be settled in an action to recover possession of the land. If the defendants' contentions are sound, and the petition states no cause of action, all rights of the plaintiff with regard to the land have been forfeited—have ceased to exist, and he has no claim in an action of ejectment or otherwise for any allowance either on account of part payment or improvements. As was said in the defendants' brief:

"The case of *Boeken vs. Alderman,* 26 Kan. 738, was an action of ejectment, in which the contract between the parties was practically identical in its terms with the contract in the case at bar. The court in that case holds that the defendant had no right to the benefit of the occupying claimant act, and could not recover for improvements, payments of purchase-money or taxes. This case is decisive of the question raised by the appellant in the case at bar."

The petition alleges that both deferred payments were made by the plaintiff. The date of the first, however, was February 20, 1916, while the contract was not assigned to him until December 2, 1916. Of course he might have made the payment in anticipation of the assignment. At all events the allegation is sufficient to assert knowledge on his part of the first deferred payment having been accepted after it was due, which is the only importance the matter has.

The motion for a rehearing is overruled.