(159 P.3d 1042)
No. 96,697

FOUNDATION PROPERTY INVESTMENTS, LLC, *Appellee,* v. CTP, LLC, *Appellant.*

Opinion filed May 25, 2007.

*Joshua M. Ellwanger*, of Blackwell Sanders Peper Martin LLP, of Kansas City, Missouri, for appellant.

*Amy Fellows Cline* and *Rachael K. Pirner*, of Triplett, Woolf & Garretson, LLC, of Wichita, for appellee.

Before MCANANY, P.J., GREEN and CAPLINGER, JJ.

GREEN, J.: CTP, LLC (CTP) appeals from a summary judgment granted in favor of Foundation Property Investments, LLC (Foundation) in Foundation's action to foreclose a promissory note between it and CTP. This litigation arises out of a loan made by Foundation to CTP. CTP signed a promissory note for the loan. After receiving 10 late payments from CTP, Foundation accelerated the note and sued to recover the entire balance owed on the note. The ultimate question is whether Foundation waived its right to accelerate the promissory note by accepting late payments from CTP. Because we determine that Foundation waived the condition

of prompt payment, we reverse and remand to the trial court with instructions to enter judgment in favor of CTP.

In April 2004, CTP, an Iowa limited liability company, purchased a truck stop in South Hutchinson, Kansas. As part of the transaction, CTP borrowed $96,000 from Foundation, a Kansas limited liability company, to purchase the truck stop. The loan was evidenced by a promissory note, which provided:

"FOR VALUE RECEIVED, the undersigned [CTP] promises to pay to the order of Foundation Property Investments, L.L.C., the sum of Ninety Six Thousand Dollars ($96,000.00) with interest thereon from April 26, 2004, payable monthly at the rate of Five and Three Quarters Percent (5.75%) per annum as follows:

"Six Hundred Seventy Three Dollars and Fifty Four Cents ($673.54) including interest, on or before the 1st day of June, 2004, and Six Hundred Seventy Three Dollars and Fifty Four Cents ($673.54) including interest, on or before the 1st day of each and every month thereafter until June 1, 2009 when all sums due hereunder are due and payable in full.

"Interest shall first be deducted from the payment and any balance shall be applied on principal.

"Principal and interest not paid when due shall draw interest at the rate of twelve percent (12%) per annum. Upon default in payment of any interest, or any installment of principal, the whole amount then unpaid shall become immediately due and payable at the option of the holder without notice. The undersigned, in case of suit on this note, agrees to pay attorney's fees.

"Makers, endorsers and sureties waive demand of payment, notice of non-payment, protest and notice. Sureties, endorsers and guarantors agree to all of the provisions of this note, and consent that the time or times of payment of all or any part hereof may be extended after maturity, from time to time, without notice."

CTP paid the first four installments on or before their due date. Beginning in October 2004, however, CTP was late in making the next 10 payments. A history of the payments is as follows:

| Payment Due Date | Date Payment Received |
| --- | --- |
| June 1, 2004 | June 1, 2004 |
| July 1, 2004 | July 1, 2004 |
| August 1, 2004 | July 28, 2004 |
| September 1, 2004 | September 1, 2004 |
| October 1, 2004 | October 4, 2004 |
| November 1, 2004 | November 29, 2004 |

| December 1, 2004 | December 3, 2004 |
| January 1, 2005 | January 7, 2005 |
| February 1, 2005 | February 18, 2005 |
| March 1, 2005 | March 11, 2005 |
| April 1, 2005 | May 23, 2005 |
| May 1, 2005 | May 23, 2005 |
| June 1, 2005 | June 15, 2005 |
| July 1, 2005 | July 15, 2005 |

In a letter dated July 8, 2005, Foundation's counsel wrote a letter to CTP's manager. The letter stated that the note was in default and that Foundation was "exercising its option to declare all of the unpaid principal and interest immediately due and payable." Foundation demanded full payment of the note by July 31, 2005. In response, CTP's counsel asserted that because Foundation had continually accepted late payments, the parties had established a course of dealing permitting payments to be made beyond their contractual due dates.

On July 28, 2005, Foundation sued CTP to collect the full amount due under the note. CTP's answer alleged that Foundation had waived its right to accelerate the note due to its prior acceptance of late payments. Moreover, CTP asserted that Foundation's action was barred by the doctrines of estoppel, laches, and unclean hands.

Foundation later moved for summary judgment; in response, CTP filed a "cross-motion for summary judgment." The trial court granted Foundation's summary judgment motion. In its holding, the trial court found that the language of the note permitted Foundation to exercise the option to accelerate. The court further held that Foundation's repeated acceptance of late payments did not constitute a waiver of the option to accelerate and determined that Foundation was entitled to payment of the loan's principal in full, including accrued interest and attorney fees and costs, for a total amount of $110,975.58.

## Standard of Review

" ' "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." [Citations omitted.]' " *State ex rel. Stovall v. Reliance Ins. Co.*, 278 Kan. 777, 788, 107 P.3d 1219 (2005).

The relevant facts in the present case are uncontroverted. When there is no factual dispute, appellate review of an order regarding summary judgment is de novo. *Roy v. Young*, 278 Kan. 244, 247, 93 P.3d 712 (2004).

## I. *Does Iowa Law Apply to the Present Case?*

CTP contends that because the promissory note was signed in Iowa, the trial court erred in not applying Iowa law. CTP relies primarily on *Dunn v. General Equities of Iowa, Ltd.*, 319 N.W.2d 515 (Iowa 1982), for the proposition that an acceleration clause may be waived based on a previous course of dealing between the parties.

In granting Foundation's summary judgment motion, the trial court acknowledged that CTP alleged that Iowa law should apply, but did not directly address the merits of this argument. Instead, the court relied upon the Kansas authorities cited in Foundation's brief to support its conclusion that Foundation did not waive its right to accelerate payment of the note. Therefore, the trial court implicitly rejected CTP's argument that Iowa law should apply. As a result, we must determine whether the court properly applied Kansas law to the facts in this case. The determination of which state's law applies is a question of law over which this court has unlimited review. *Resolution Trust Corp. v. Atchity*, 259 Kan. 584, 590, 913 P.2d 162 (1996).

In determining what state's law applies to a contractual dispute, Kansas follows the Restatement First of the Conflict of Laws. Accordingly, Kansas applies the *lex loci contractus* doctrine and ap-

plies the law of the state where the contract is made. A contract is made where the last act necessary for its formation occurs. *Novak v. Mutual of Omaha Ins. Co.*, 29 Kan. App. 2d 526, 534, 28 P.3d 1033, *rev. denied* 272 Kan. 1419 (2001). "Generally the party seeking to apply the law of a jurisdiction other than the forum has the burden to present sufficient facts to show that other law should apply." *Layne Christensen Co. v. Zurich Canada*, 30 Kan. App. 2d 128, 143-44, 38 P.3d 757 (2002). CTP contends that Iowa law governs this dispute because its manager, John Daniels, signed the note in Iowa. Daniels was the sole signatory on the note.

CTP's argument is flawed. The mere fact that the note was signed in Iowa does not mean that the contract was formed there. Closing for the purchase of the truck stop, which was the subject of the loan secured by the note, occurred in Kansas. Daniels delivered the note to Kansas for closing. The promissory note had no legal effect until the closing occurred. Additionally, CTP entered into a management services agreement with Foundation Properties Corporation (FPC), a separate legal entity from plaintiff Foundation. FPC was placed in charge of managing and operating the truck stop. While the promissory note is silent on the issue of which state's law governs, CTP's management services agreement provided that the agreement be construed in accordance with Kansas laws. CTP has failed to present sufficient facts which would warrant the application of Iowa law. As a result, the trial court properly applied Kansas law in deciding the case.

II. *Did the Trial Court Err in Determining that Foundation had not Waived its Right to Accelerate the Promissory Note by Repeatedly Accepting Payments after their Due Date?*

Next, CTP argues that regardless of which state's law applies, Foundation waived its right of acceleration by repeatedly accepting late payments from CTP.

Promissory notes and mortgages are contracts between the parties, and ordinary rules of construction applicable to contracts apply to them. *Mark Twain Kansas City Bank v. Cates*, 248 Kan. 700, 709, 810 P.2d 1154 (1991). "The interpretation and legal effect of written instruments are matters of law, and an appellate court ex-

ercises unlimited review. Regardless of the construction given a written contract by the trial court, an appellate court may construe a written contract and determine its legal effect. [Citation omitted.]" *Unrau v. Kidron Bethel Retirement Services, Inc.*, 271 Kan. 743, 763, 27 P.3d 1 (2001).

In granting Foundation's summary judgment motion, the trial court held, in relevant part:

"Although plaintiff accepted late payments for a number of months, and thus chose to forego a declaration of default during those months, the note clearly makes a declaration of default optional on plaintiff's part. An option is simply that. It is there to be exercised if and when the holder of the option chooses to do so.

"The plaintiff did not waive its right to pursue its contractual remedies merely because it chose not to do so for a 9-month period (October 04—June 05)."

"The general rule is that where a mortgage contains an acceleration clause relating to default of a required payment, the mortgagee is entitled because of such default to enforce the acceleration clause at once according to its terms." *Carpenter v. Riley*, 234 Kan. 758, 764, 675 P.2d 900 (1984). Like other contract rights, however, an acceleration clause may be waived. *Smith v. Smith*, 186 Kan. 728, 735, 352 P.2d 1056 (1960). A waiver is the intentional relinquishment of a known right, and intention may be inferred from conduct. *Iola State Bank v. Biggs*, 233 Kan. 450, 458-59, 662 P.2d 563 (1983).

Moreover, in defining the word "waiver," our Supreme Court stated that it was "an intentional renunciation of a claim or right and exists only where there has been some absolute action or inaction inconsistent with that claim or right." *Proctor Trust Co. v. Neihart*, 130 Kan. 698, 705, 288 Pac. 574 (1930).

In determining that Foundation did not waive its right to accelerate the terms of the note, the trial court relied upon Foundation's citations to *St. Francis Regional Med. Center, Inc. v. Critical Care, Inc.*, 997 F. Supp. 1413, 1438 (D. Kan. 1997), for the proposition that " 'mere indulgence or silence cannot be construed as a waiver,' " and *Nelson v. Robinson*, 184 Kan. 340, 347, 336 P.2d 415 (1959), which upheld a contract's forfeiture provision where plaintiff did not make "any voluntary or intentional renunciation of his right to receive such payments within the time specified in the

contract or [lead] defendants to believe he was waiving those rights."

The trial court, however, did not address this court's decision in *Postal Savings & Loan Ass'n v. Freel*, 10 Kan. App. 2d 286, 698 P.2d 382 (1984). The *Freel* court held that a mortgagee's acceptance of a late or partial payment will generally waive the right to declare default and accelerate the note. 10 Kan. App. 2d at 287. There, the plaintiff sued to foreclose its mortgage on the grounds that the defendants were delinquent in their payments. The defendants argued that because the plaintiff had accepted late payments in the past, it had waived the right to accelerate payment. The *Freel* court stated:

> "It is generally accepted that a mortgagee's acceptance of a late or partial payment will effect a waiver of the right to declare default and accelerate a debt because of the lateness of that payment. [Citation omitted.] In addition, a past practice of excusing defaults occasioned by late payments may under certain circumstances be construed as an implied waiver of an acceleration clause. [Citations omitted.]" 10 Kan. App. 2d at 287.

The *Freel* court, however, ultimately concluded that the plaintiff's past practice of accepting late payments did not waive its right to accelerate the promissory note because the note contained an express anti-waiver provision which stated that " '[a]ny waiver of any payment hereunder or under the instrument securing this note at any time, shall not, at any other time, be taken to be a waiver of the terms of this note or the instrument securing it.' " 10 Kan. App. 2d at 287.

Despite Foundation's attempts to analogize the anti-waiver language in *Freel* to the language in the present case, it is clear that the CTP note did not contain a similar anti-waiver provision. Foundation argues that the provisions of the note should be strictly construed against CTP, because it was the drafter of the note. Foundation also points to one of the note's provisions: "Upon default in payment of any interest, or any installment of principal, the whole amount then unpaid shall become immediately due and payable at the option of the holder without notice." Foundation argues that under this provision, CTP expressly waived demand of payment and notice of nonpayment.

Foundation's arguments afford no basis for saying that it did not waive the condition of prompt payment by routinely accepting late payments. There is no dispute that CTP drafted the note or that the language of the note allowed Foundation to accelerate payment at its option, without notice to CTP. The fact that the note affords Foundation the option to accelerate, however, does not mean that Foundation could not waive the acceleration clause, especially when the note does not contain an anti-waiver provision. Consequently, the question that we must determine is whether Foundation waived the option to accelerate based on its pattern of accepting late payments from CTP.

CTP argues that Foundation's acceptance of late payments over 9 months' time (October 2004—June 2005) established a course of dealing by which late payments would be accepted. Course of dealing is defined as a "sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." K.S.A. 84-1-205(1).

Foundation alleges that course of dealing cannot be found in the present case because this concept is only applicable to cases which fall under the Uniform Commercial Code and only relates to conduct between the parties that occurs before the agreement in question.

Contrary to Foundation's argument, our Supreme Court has determined that the course of dealing concept is applicable in instances similar to the present case:

" 'If the vendor in a contract for the sale of land, whereby time is made of the essence, repeatedly receives payments after the date when they are due, and thereby establishes a course of dealing inconsistent with insistence on the strict performance of the contract, he cannot thereafter declare a forfeiture for a failure to make a payment promptly, unless he has given notice to the vendee of his intention to require prompt payment in the future.'

. . . .

". . . It cannot be said as a matter of law that two consecutive instances of the acceptance of overdue payments, or any other definite number, will always preclude the seller from insisting upon a forfeiture on account of a failure to meet the next payment when due; but neither can it be said as a matter of law that such

result can never follow from so few as two instances of the kind." *Holman v. Joslin*, 110 Kan. 674, 678-79, 204 Pac. 697 (1922).

Other jurisdictions also support the position that, absent an anti-waiver provision in the note or actual notice that future late payments will not be accepted, a previous practice of accepting late payments precludes acceleration of the note. See, *e.g.*, *Dunn*, 319 N.W.2d at 516-17 (holding that payees waived their right to invoke acceleration clauses by accepting late payments on several prior occasions); *Nolan J. Cunningham Apartments, Inc. v. Dupre*, 428 So. 2d 1046, 1047 (La. App. 1983) ("When a series of installment payments are due and the payee customarily permits payments to be made after the due date, a course of conduct is established whereby the payee, by acquiescence therein, is deemed to have waived his right to demand that an acceleration clause be enforced without first placing the payor in default, thereby signaling an end to such conduct."); *Sternberg v. Mason*, 339 So. 2d 373, 376 (La. App. 1976) ("The basis for such a rule is to prevent an obligee from lulling an obligor into a false sense of security by accepting late payments over an extended period of time, without demand for punctuality, and then at a future date of his own choosing accelerate the entire balance due on the obligation when the 'late' payment complained of falls within the same pattern."); *Barker v. Agee*, 93 N.C. App. 537, 541, 378 S.E.2d 566 (1989), *aff'd in part and rev'd in part*, 326 N.C. 470, 389 S.E.2d 803 (1990) ("A note-holder who repeatedly accepts late installments will be held to have waived the right to accelerate the debt on that ground unless the payor is first notified that prompt payment will be required in the future."); *ACME Cleveland Corp. v. Trayco Elec. Co., Inc.*, 27 Ohio Misc. 2d 1, 2, 499 N.E.2d 930 (1983) ("Contrary to the plaintiff's stated position, its action in unconditionally accepting the defendant's tardy initial payment tended to muddy what would have otherwise appeared to be its crystal clear intent to accelerate the balance due."); *Stinemeyer v. Wesco Farms, Inc.*, 260 Or. 109, 116, 487 P.2d 65 (1971) ("The vendor who has, by a practice of accepting late payments, permitted the purchaser to rely on this course of conduct, need only give reasonable notice that thereafter

he will insist on strict performance of the contract. Further defaults would entitle him to his foreclosure remedy.").

In the present case, there is nothing in the record to indicate that Foundation ever objected to CTP's late payments before the July 2005 letter stating that Foundation was exercising its option to accelerate payment on the note. Foundation's action of accepting late payments from CTP was inconsistent with its claim or right to receive prompt payments. See *Cue v. Johnson,* 73 Kan. 558, 85 Pac. 598 (1906) ("When the right to declare a forfeiture under such a contract exists, the party entitled thereto must assert his right promptly, and his acts relating thereto must be unequivocal, and inconsistent with the continuance of the contract, or he will be held to have waived such right."). Accordingly, the trial court incorrectly determined that Foundation's conduct did not constitute a waiver of its right of acceleration.

Foundation, however, suggests that CTP suffered no detrimental reliance because Foundation's delay in accelerating the payment actually benefitted CTP: the principal balance was less than it would have been had Foundation exercised the acceleration clause upon any of CTP's previous late payments. Nevertheless, CPT had reasonably relied on Foundation accepting late payments without exercising the acceleration clause. Moreover, CTP will clearly suffer prejudice if forced to now pay the note in full. It would be inequitable to permit Foundation to accelerate the entire note without Foundation first giving notice to CTP that Foundation would no longer accept late payments. See *Holman v. Joslin,* 110 Kan. at 678; *Fox v. Grange,* 261 Ill. 116, 103 N.E. 576 (1913) (Vendor waived the condition of prompt payment. Vendor could withdraw his waiver and reestablish the prompt payment condition, but vendor cannot do so peremptorily but only after reasonable notice to vendee.).

Foundation also contends that CTP's course of dealing claim is barred because a change in CTP's ownership occurred in July 2005, thereby nullifying any course of dealing which had been established before that time.

When the note was executed in April 2004, Foundation was a 40% owner of CTP. CTP entered into a management services

agreement with FPC. One of FPC's duties was to make payments on the note to Foundation, on behalf of CTP. Brian Warren and Philip Brooks are the sole members of both Foundation and FPC. Consequently, Warren and Brooks were essentially responsible for paying themselves on the note. In March 2005, CTP terminated the management services agreement and later bought out Foundation's ownership interest in CTP.

Although Foundation contends that the change in CTP's ownership abolished any prior course of dealing between the parties, this argument is without merit. The parties did not change. FPC made payments on behalf of and as an agent for CTP, and CTP continued to make those payments after the management services agreement had been terminated. Regardless of the change in CTP's ownership, the fact remains that Foundation established a pattern of accepting late payments from CTP. The course of dealing was not abolished by CTP's ownership change.

Finally, Foundation argues that in the event this court finds in favor of CTP's waiver defense, this court lacks the power to grant CTP affirmative relief because Foundation did not have sufficient time to respond to CTP's cross-motion for summary judgment. Indeed, the trial court determined that CTP's cross-motion did not allow Foundation sufficient response time and, therefore, could not serve as a basis for affirmative relief for CTP.

Nevertheless, under K.S.A. 60-256, a court may enter summary judgment in favor of the nonmoving party on its own motion where there remains no genuine issue as to any material fact and on the evidentiary record judgment must be for one of the parties as a matter of law. *Wilcox v. Wyandotte World-Wide, Inc.*, 208 Kan. 563, 572, 493 P.2d 251 (1972). As a matter of law, judgment must be entered in CTP's favor.

Summary judgment in favor of Foundation is reversed, and the case is remanded to the trial court with instructions to enter judgment in favor of CTP.