(319 P.3d 562)
No. 108,875

CENTRAL POWER SYSTEMS & SERVICES, INC., *Appellee*, v. UNIVERSAL UNDERWRITERS INSURANCE COMPANY and ZURICH AMERICAN INSURANCE COMPANY, *Appellants*.

Opinion filed February 21, 2014.

*Jennifer M. Hill*, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, for appellants.

*Christopher J. Sherman* and *Tyler Peters*, of Payne & Jones, Chartered, of Overland Park, for appellee.

Before LEBEN, P.J., BUSER and ATCHESON, JJ.

LEBEN, J.: Universal Underwriters Insurance Company ("Universal Underwriters") and Zurich American Insurance Company ("Zurich"), collectively "the insurers," appeal the district court's determination that the insurers had the duty to defend an insured against claims made against the insured in a lawsuit. The district court held that the insurers were obligated to defend Central Power Systems & Services, Inc. ("Central Power") in litigation in-

stigated by a customer of Central Power. That customer had alleged that Central Power had been negligent and had made negligent misrepresentations regarding the way products Central Power provided would operate. Applying Missouri law, the district court found that the claims asserted against Central Power for negligence and negligent misrepresentation triggered the insurers' duty to defend under the insurance coverage provided to Central Power.

The insurers contend that the district court erred in three ways: (1) by applying Missouri law; (2) by finding the policy covered negligence and negligent-misrepresentation litigation; and (3) by finding no exclusion in the policy that extinguished the insurers' duty to defend Central Power on these claims. But we find no error:

- Missouri law applies because the insurance contract was made in Missouri when the last act needed for creation of the insurance contract—delivery of the insurance policy—took place at Central Power's Missouri business location.
- Under Missouri law, claims for negligence and negligent misrepresentation have been held covered under similar insurance policies.
- Under Missouri law, exclusions apply only when their language clearly and unambiguously precludes coverage, and no exclusion cited here by the insurers does so.

Because the court below appropriately applied Missouri law, and because the plain language of the policy covers and does not exclude coverage for negligence and negligent misrepresentation, we affirm the district court.

### FACTUAL AND PROCEDURAL BACKGROUND

As part of a single insurance policy, Central Power purchased general-liability coverage (Part 950), personal umbrella coverage (Part 970), and general umbrella coverage (Part 980) from the insurers in July 2005. The contracts were finalized when Universal mailed the policies to Central Power's principal place of business in Missouri.

This dispute arose when Central Power was sued in the United States District Court for the District of Kansas by Eagle Well Service, Inc. ("Eagle Well") in April 2008. Eagle Well and Central Power had formed a contract under which Central Power was to furnish Eagle Well with 10 oil-rig engines and 10 oil-rig transmissions. Eagle Well alleged that Central Power had told them that the engines and transmissions would be operational without any additional components.

But the engines could not operate without a wiring harness. Central Power attempted to fashion a wiring harness for the engines, but the first attempt failed, apparently based on miscommunication: The wiring harness produced did not fit the engine because the wrong measurements had either been requested by or submitted to Central Power. Eagle Well then found a third party to make wiring harnesses that would meet their needs; to install the wiring harnesses, Eagle Well had to uninstall the engines from the rigs.

In the suit against Central Power, Eagle Well alleged damages in the form of lost profits for the time it took to make the engines independently operational, as well as money to cover the costs of purchasing the wiring harnesses from the third party and attaching those harnesses to the engines.

Eagle Well's lawsuit against Central Power alleged five theories of recovery, including breach of contract, fraudulent inducement, negligence, and negligent misrepresentation. The United States District Court for the District of Kansas granted Central Power summary judgment on the fraudulent-inducement claim, finding no intentional fraud in Central Power's dealings with Eagle Well. *Eagle Well Service, Inc. v. Central Power Systems & Services, Inc.*, No. 08-2184-CM, 2009 WL 2776851, at *2-3 (D. Kan. 2009) (unpublished opinion). The case proceeded on the remaining theories. Shortly before trial, in April 2011, Eagle Well and Central Power reached a settlement and stipulated to dismissal of the lawsuit.

After Eagle Well had filed its lawsuit, Central Power contacted the insurers asking that they provide the defense to Eagle Well's lawsuit and coverage for Central Power's losses (potential damage awards against it in the Eagle Well lawsuit) under the policy. After

a year-long investigation, Zurich refused to defend or to indemnify Central Power under the policy.

In August 2009, Central Power filed a petition for declaratory relief in the district court seeking a judgment that it was owed a defense under its policy with the insurers. The parties stipulated to the facts, and the district court, applying Missouri law, concluded that Eagle Well's negligent-misrepresentation and negligence claims were covered by the policy, thus triggering the insurers' duty to defend Central Power in the Eagle Well lawsuit.

Central Power brought its claims jointly against both Zurich and Universal Underwriters. The record before us does not explain the relationship between these insurers, but we recognize that Zurich is the parent company of Universal Underwriters. See *Automax Hyundai South v. Zurich American Ins.*, 720 F.3d 798, 801 (10th Cir. 2013). The parties stipulated in the district court that the policy was issued by Universal Underwriters, but the insurers agreed in their section of the pretrial order in this case that both insurers shared the insurance obligations arising under the policy. On appeal, the insurers contend that the district court was wrong to apply Missouri law and that even if Missouri law applies, they did not owe Central Power a defense against the claims made by Eagle Well.

## ANALYSIS

To resolve this dispute, we must determine (1) which state's law applies and (2) whether the insurers owed Central Power a defense and indemnification for losses under the insurance policy. In making these determinations, we review the matter independently, without any required deference to the district court, because the parties presented the facts at trial by a list of agreed facts and several written exhibits. Which state's law applies presents a legal question; we must resolve that question independently, without any required deference to the district court. *Foundation Property Investments v. CTP*, 37 Kan. App. 2d 890, 894, 159 P.3d 1042 (2007), *aff'd* 286 Kan. 597, 186 P.3d 766 (2008). As to the merits of the case, the district court heard no testimony, so we are in as good a position as it was to determine both the factual and legal

disputes presented. See *Rucker v. DeLay*, 295 Kan. 826, 830, 289 P.3d 1166 (2012); *American States Ins. Co. v. Hartford Accident & Indemnity Co.*, 218 Kan. 563, Syl. ¶ 4, 545 P.2d 399 (1976). Accordingly, we also resolve the merits of the case without any required deference to the district court.

I. *Missouri Law Applies When Determining Whether Insurers Have the Duty to Defend Under an Insurance Contract Made in Missouri.*

We apply Kansas choice-of-law rules to determine which state's law applies. *ARY Jewelers v. Krigel*, 277 Kan. 464, Syl. ¶ 11, 85 P.3d 1151 (2004). In deciding which state's law to apply to a contract dispute, Kansas courts apply the Restatement (First) of Conflict of Laws (1934). *ARY Jewelers*, 227 Kan. 464, Syl. ¶ 10.

Under this approach, the law of the place where the contract was made generally governs "the nature and extent of the duty" of each party to the contract. Restatement (First) of Conflict of Laws § 332(f). But if the dispute involves the manner, method, or legality of the acts required for performance, the law of the place where the contract was to be performed applies. Restatement (First) of Conflict of Laws §§ 358(a) and (d), 360(1), 361. This appeal centers on whether the insurers had a duty to defend Central Power in the Eagle Well lawsuit, so resolving the choice-of-law dispute depends on whether an insurer's duty to defend presents an issue of contract interpretation or contract performance.

Our court has conflicting precedents on this issue. In *Layne Christensen Co. v. Zurich Canada*, 30 Kan. App. 2d 128, 143, 38 P.3d 757 (2002), our court concluded that the law of the place of contract formation applied when determining whether an insurer owed its insured coverage under an insurance policy. But in an earlier case, *Aselco, Inc. v. Hartford Ins. Group*, 28 Kan. App. 2d 839, 848, 21 P.3d 1011, *rev. denied* 272 Kan. 1417 (2001), the same three-judge panel had said that determining whether the insurer had a duty to defend under a policy was an issue of contract performance and that the law of the place of performance should apply.

In our view, the second decision, *Layne Christensen*, is better reasoned, and we follow its rule. We reach this decision for three reasons.

First, this rule best comports with the tests outlined in the First Restatement. Whether a duty to defend exists goes to the heart of the insurance contract, and substantive questions about the meaning of the parties' contractual agreement are determined by the law of the place of contract formation under the First Restatement. The Restatement's authors recognized that there would be potential uncertainty between applying the law of the place of contract formation and applying the law of the place of performance: An official comment to the Restatement conceded that "there is no logical line which separates questions of the obligation of the contract . . . from questions of performance." Restatement (First) of Conflict of Laws § 358, comment b. But here we are dealing with the most basic of substantive questions—did insurers have any duty at all under the contract to provide a defense? The comments to the First Restatement strongly suggest that such a basic substantive question should be governed by the law of the place of contracting: Even when performance is involved, the comment suggests that "regulation of the substance of the obligation" generally is determined by the place of contracting, and the law of the place of performance "is not applicable to the point where the substantial obligation of the parties is materially altered." Restatement (First) of Conflict of Laws § 358, comment b; see Richman, Reynolds & Whytock, Understanding Conflict of Laws § 66[a] (4th ed. 2013).

In a similar case, the United States District Court for the District of Kansas held that a dispute about the existence of the duty to defend under an insurance policy was so fundamental that it had to be determined under the law of the place of contracting:

> "Here, the dispute between the parties exists as to whether [the insurer] had *any* duty *at all* to defend [the insureds], not whether it performed that duty but perhaps did so inadequately. Accordingly, the existence of the duty to defend must be resolved by the law of Kansas, as the place where the contract of insurance was formed." *Collective Brands, Inc. v. National Union Fire Ins. Co. of Pittsburgh, P.A.*, No. 11-4097-JTM, 2013 WL 66071, at °12 (D. Kan. 2013) (unpublished opinion).

In our case, Zurich and Universal Underwriters did not perform *at all* under any duty to defend Central Power against the Eagle Well lawsuit. So what's at issue is mostly whether they were obligated to perform *at all*, not some specific aspect of how the insurers should have carried out their duty to defend. That's the very substance of the contractual obligation, which the First Restatement determines under the law of the place of contracting.

Second, applying the law of the place of contract formation to determine whether an insurer has a duty to defend should yield more consistent results when events that might trigger the duty to defend occur in different states. Central Power offers a useful hypothetical—a tourist bus crash in which 75 people are injured or killed, but in which suits are filed in many states (since the tourists came from different states). If the law of the place of contract performance applied to determining whether an insurer had a duty to defend, an insurer could feasibly be required to defend in some locations, but not others, under the same policy for litigation arising from the same incident. Both the insurer and the insured should be able to know what the policy provides for when it is entered into; that's possible in this hypothetical situation by applying the law of the place of contract formation. By contrast, applying the law of the place of performance would lead to inconsistent results; it also would either prevent the parties from knowing the extent of the contractual obligation at the outset or require that they investigate the law of all states where a suit might conceivably be filed.

Third, we note that the federal trial and appellate courts handling Kansas cases have noted the tension between *Aselco* and *Layne Christensen* and have chosen to follow *Layne Christensen*. *Moses v. Halstead*, 581 F.3d 1248, 1253-54 (10th Cir. 2009) (concluding that the analysis in *Layne Christensen* better reflected the First Restatement); *Collective Brands*, 2013 WL 66071, at *10-12 (same). We also note that, on matters of Kansas state law, federal courts must abide by the rulings of the Kansas Supreme Court, but the decisions of the Kansas Court of Appeals are not binding on the federal court. *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 n.1 (10th Cir. 2013). The federal courts' choice to follow the *Layne Christensen* decision supports our decision to do so, and having

consistency between the interpretations of the state and federal courts on this point of Kansas law is beneficial in allowing private parties to guide their conduct.

Because the law where the contract was made applies, we must now determine where the insurance contract was made. For choice-of-law purposes, Kansas law considers a contract to be made in the place in which the last act required for contract formation occurs. *Wilkinson v. Shoney's, Inc.*, 269 Kan. 194, 210, 4 P.3d 1149 (2000). Central Power argues that an insurance contract is made at the place where the policy is delivered to the insured, citing *Layne Christensen*. Indeed, in that case our court noted that Kansas courts "have repeatedly held the contract is made where the policy is delivered." 30 Kan. App. 2d at 144 (citing cases). In our case, the insurers have not disputed this point; their argument about the choice-of-law question was primarily that the law of the place of performance, Kansas, should apply. We do not have the entire insurance contract in our record, but the declaration section indicates that the policy was to be mailed to Central Power at its Liberty, Missouri, address. Given this record and the arguments made, we conclude that the last act necessary to make this policy effective was delivery and that delivery occurred in Missouri. Accordingly, the contract is deemed to have been made in Missouri, and we will apply Missouri law to determine the substantial obligations of the parties under the insurance contract.

II. *Under Missouri Law, the Insurers Had a Duty to Defend Central Power in the Eagle Well Lawsuit.*

Having determined that Missouri law applies, we turn to determination of the insurers' duties under the policy. Under Missouri law, an insurer's duty to defend exists when either the claims made in the underlying lawsuit or the reasonably discoverable facts show the potential for some type of liability the insurance company has agreed to protect the insured from. *Stark Liquidation v. Florists' Mut. Ins.*, 243 S.W.3d 385, 392 (Mo. App. 2007); *Truck Ins. Exchange v. Prairie Framing, LLC*, 162 S.W.3d 64, 83 (Mo. App. 2005); see Jerry & Richmond, Understanding Insurance Law § 111[c], pp. 798-806 (5th ed. 2012). The presence of some claims

falling outside the scope of the policy does not eliminate the insurer's duty to defend the insured so long as at least one claim potentially falls within the policy's scope. *Truck Ins. Exchange*, 162 S.W.3d at 79; see *Stark Liquidation*, 243 S.W.3d at 392.

Central Power and the insurers have addressed three potentially applicable coverage provisions (each set forth in what the policy calls a "Part" of the policy)—Parts 950, 970, and 980. Part 950 provides the general liability coverage, Part 970 provides personal umbrella coverage, and Part 980 provides general umbrella coverage. Umbrella coverage in an insurance policy insures risks that either are not covered at all in an underlying insurance policy or are covered only up to a specific dollar limit. 15 Couch on Insurance 3d § 220:32 (1999).

As the parties have framed the case on appeal, we need only determine whether the insurers had a duty to defend under at least one of these coverages. The district court awarded Central Power its costs of defending the Eagle Well lawsuit, as well as its costs in prosecuting this lawsuit over the insurance coverage. The insurers agreed in the district court that the amounts awarded were reasonable, and the insurers have made no suggestion on appeal that an award of these amounts would be in error so long as there was coverage under at least one part.

We will focus on Part 950, which provides the general underlying liability coverage, and Part 980, which provides the general umbrella coverage. Although we don't have the full policy (not even all the declaration pages are included in the court record), the declaration pages we have for the personal umbrella policy appear to list as "insureds" only specific individuals, not Central Power itself. The Eagle Well lawsuit was brought only against Central Power; none of its individual officers or agents were named as parties to that lawsuit.

We turn, then, to the language of those coverage provisions. We will first look to see whether the coverage provisions are broad enough to trigger a duty to defend the claims made in the Eagle Well lawsuit. If so, we will then look to see whether any of the policy exclusions from coverage eliminate the duty to defend that otherwise would exist.

The separate parts of the policy have slightly different language, but each part requires at least three things for there to be coverage: there must be "damages" because of an "injury" that was caused by an "occurrence." Each is a defined term under the policy. The insurers agree that Eagle Well's lawsuit sought damages but contend that the lawsuit claims didn't allege either an injury or an occurrence as those terms are defined under the policy.

Parts 950 and 980 each have their own sections for definition of terms, but the definition of "injury" in each part includes "damage to or loss of use of tangible property." Eagle Well alleged that its oil-rig engines couldn't be used without the proper wiring harness. Engines are tangible property (*i.e.*, property with a physical existence), and Eagle Well alleged that it lost the use of the engines until proper wiring harnesses were installed.

Thus, the loss of use of the engines appears to qualify as an "injury" under the policy language. Even so, the insurers make one other argument that there was no injury as defined under the policy. The insurers first suggest that Eagle Well suffered only economic losses (*i.e.*, lost profits from the inability to use the oil-well rigs but no damage to the rigs themselves). Then, citing primarily Kansas caselaw, the insurers argue that purely economic damages do not constitute an injury under a liability insurance policy. But our case is governed by Missouri law, and purely economic damages resulting from the loss of use of tangible property have been found to constitute an injury under Missouri liability policies with similar language. *E.g.*, *Stark Liquidation*, 243 S.W.3d at 393; *American States Ins. v. Kempker Const. Co.*, 71 S.W.3d 232, 238 (Mo. App. 2002). So Eagle Well made claims that would constitute an injury under the policy.

We next consider whether the injury resulted from an occurrence. Each part of the policy defines occurrence to mean an "accident" that results in an injury "neither intended nor expected from the standpoint of a reasonably prudent person." The insurers argue that under the plain meaning of the term "accident," there wasn't one—Central Power didn't accidentally damage the engines or the wiring harnesses.

But Eagle Well's claims included ones for negligence (*i.e.*, the failure to exercise ordinary care), specifically negligence in the work performed and negligent misrepresentation about the work that needed to be done. In Missouri, " 'when a "liability policy defines occurrence as meaning accident, Missouri courts consider this to mean injury caused by the negligence of the insured." ' " *Assurance Co. of America v. Secura Ins. Co.*, 384 S.W.3d 224, 235 (Mo. App. 2012) (quoting *Stark Liquidation*, 243 S.W.3d at 393 [citing cases]). Similarly, negligent-misrepresentation claims are deemed occurrences under such policies. *Stark Liquidation*, 243 S.W.3d at 393; *American States Ins.*, 71 S.W.3d at 236-38.

The insurers argue that Eagle Well's claim was primarily one for breach of contract, which would not be covered. But as we have already noted, even if some claims aren't covered, an insurer's duty to defend is triggered if at least one claim *is* within the scope of coverage. *Truck Ins. Exchange*, 162 S.W.3d at 79. Under well-established Missouri law, the negligence and negligent-misrepresentation claims were within the scope of coverage here unless some specific exclusion provides otherwise.

We turn next to the insurers' argument that coverage for the claims made in the Eagle Well lawsuit was specifically excluded. An exclusion provision in an insurance contract may limit the coverage otherwise available, *West v. Jacobs*, 790 S.W.2d 475, 478 (Mo. App. 1990), but exclusion provisions are construed in favor of providing coverage. *Stark Liquidation*, 243 S.W.3d at 394. An exclusion must be clear and unambiguous to be enforced. *Todd v. Missouri United School Ins. Council*, 223 S.W.3d 156, 163 (Mo. 2007); *Stark Liquidation*, 243 S.W.3d at 394.

We find no exclusion that clearly and unambiguously eliminates the coverage otherwise provided by Parts 950 and 980:

- Both Parts 950 and 980 have an exclusion for "liability assumed under any contract or agreement" (with some additional caveats). As Central Power points out, such exclusions are generally held to apply only to situations in which the insured (here Central Power) agrees to *assume* the contractual obligations of *another* party, not to exclude claims related to

Central Power's own obligations. See *Ferrell v. West Bend Mut. Ins. Co.*, 393 F.3d 786, 795 (8th Cir. 2005) (citing *Am. Fam. Mut. Ins. Co. v. American Girl, Inc.*, 268 Wis. 2d 16, 48-49, 673 N.W.2d 65 [2004]); *Lapeka, Inc. v. Security Nat. Ins. Co., Inc.*, 814 F. Supp. 1540, 1550 (D. Kan. 1993); 30 Noce, Mo. Prac., Insurance Law and Practice § 12:11 (2d ed. 2009). Moreover, the claims for which coverage is available under the policy are not contract claims—they are the claims for negligence and negligent misrepresentation. Central Power didn't "assume" liability for such claims under a contract. Rather, the negligence and negligent-misrepresentation claims are separate, noncontractual claims, and those claims triggered a duty to defend.

- Both Parts 950 and 980 have an exclusion for any injury "caused by any dishonest, fraudulent or criminal acts" of the insured. The insurers argue that even negligent misrepresentation should be considered a dishonest or fraudulent act covered by the exclusion. But the federal court granted summary judgment in Central Power's favor on the only explicit fraud claim (fraudulent inducement) Eagle Well made against it. *Eagle Well Service, Inc. v. Central Power Systems & Services, Inc.*, No. 08-2184-CM, 2009 WL 2776851, at *2-3 (D. Kan. 2009) (unpublished opinion). Given the mandate that we consider policy exclusions in favor of providing coverage, we conclude that this exclusion does not prevent coverage for merely negligent acts.

- Both Parts 950 and 980 have an exclusion for damages caused by the "loss of use of property not physically damaged" if caused by the insured's failure to perform under a contract or the failure of the insured's product "to meet the quality warranted or the level of performance represented." If only some of Eagle Well's claims (ones for breach of contract) were considered, this exclusion might apply. But Eagle Well's negligent-misrepresentation claim alleged that Central Power failed to mention that wiring harnesses would be needed, not that the engines provided by Central Power failed to work. And Central Power claimed in the Eagle Well litigation that

it had provided all it was required to provide under the contract. Eagle Well's negligent-misrepresentation claim was not excluded by this provision.

- Part 980 has an exclusion for claims "arising out of any manufacturer's warranty." The insurers argue that this exclusion precludes coverage even for a negligent-misrepresentation claim, but we see no logic to that argument. Breach-of-warranty claims differ from negligence claims, including negligent misrepresentation. This exclusion does not clearly and unambiguously exclude negligence-based claims from coverage.
- Part 980 has a final exclusion for hazards arising from completed products. Under this provision, there is no coverage for damages "resulting from" the product itself; from any "representations or warranties made with respect to fitness, durability, performance or use" of the product; and from "providing or failure to provide warning or instructions" for the product. Once again, because of the negligent and negligent-misrepresentation claims Eagle Well made (*i.e.*, that Central Power failed to say that wiring harnesses were needed), any damages arising from that claim would not be covered by this exclusion. The damages wouldn't result from the product Central Power provided (the engines); they would result from the lack of a product Central Power did not provide (wiring harnesses). See *Stark Liquidation*, 243 S.W.3d at 396-98. In any case, an exclusion found only in Part 980 wouldn't change the outcome here: Coverage would still exist under Part 950, and the insurers' duty to defend would still have been triggered even if this exclusion to umbrella coverage under Part 980 were to apply.

The district court's judgment is affirmed.